**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard W. MILLER, Defendant–
Appellant.**

**No. 91–50130.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided Jan. 28, 1993.

Gregory Nicolaysen, Federal Litigators Group, Inc., Beverly Hills, CA, for defendant-appellant.

John F. Libby, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BEEZER, KOZINSKI, and KLEINFELD, Circuit Judges.

BEEZER, Circuit Judge:

Defendant Richard Miller has the distinction of being the first FBI officer in history convicted of espionage. He appeals his conviction on two grounds. First, he claims that the FBI used his Mormon religious beliefs and other improper tactics to psychologically coerce him into confession. Second, he argues that the district court erred by denying his mid-trial motion to suppress wiretap evidence for failure to minimize as untimely. On both issues, we affirm.

I

The prosecution of Richard Miller on charges of espionage and transmission of classified information has a long history. The first trial ended in a hung jury. The jury in the second trial convicted Miller on six of seven counts; Miller was sentenced to life imprisonment plus fifty years. The conviction was reversed on appeal. *United States v. Miller*, 874 F.2d 1255 (9th Cir.

1989), *reh'g denied*, 884 F.2d 1149 (9th Cir.1989). In the third trial (from which this appeal is taken), Miller waived his right to a jury trial. Judge Takasugi found Miller guilty on all six counts[1] and sentenced him to twenty years in prison.

The salient background of the case is well-known and set forth in *United States v. Miller, supra*. A bare outline will sketch the details pertinent to this appeal.

Miller was a twenty-year veteran of the FBI assigned to the Foreign Counter–Intelligence Squad. Work, family, and financial problems haunted him: he had been sanctioned by his superior officers; he was late in his mortgage payments; and he had been excommunicated from the Mormon church for adultery.

In 1984, Miller began meeting and having sexual relations with Svetlana Ogorodnikova, a Soviet contact. The FBI investigated Miller's involvement with Svetlana by installing wiretaps on his phones, placing bugs in his car, and following him with physical surveillance teams. The surveillance uncovered the sexual relations between Miller and Svetlana. It also revealed a plan for Miller to fly to Eastern Europe to meet with the KGB and deliver classified documents.

Eventually, the FBI questioned Miller over five consecutive days. Miller read and signed at least eight written advice of rights and waiver of rights forms. Miller also signed consent forms to search his residence, his car, his desk, and his briefcase. Miller took polygraph tests after reading and signing advice of rights and consent to interview forms. He failed the polygraph tests.

Special Agent Bretzing, the agent in charge of the investigation and a bishop in the Mormon Church, spoke to Miller about the importance of telling the truth. Bretzing did not question Miller during the meeting. Two days later, Miller confessed to

passing at least one classified document to Svetlana.

## II

Miller claims his statements made after September 29, 1984 were involuntary. We review for clear error the district court's factual findings concerning the voluntariness of Miller's statements, including his state of mind. *United States v. Crespo de Llano*, 830 F.2d 1532, 1541 n. 2, *reh'g. denied*, 838 F.2d 1006 (9th Cir.1987); *United States v. Wolf*, 813 F.2d 970, 974 (9th Cir.1987). However, the district court found the confession voluntary without making any findings of fact.

■ We review *de novo* the district court's conclusion that the confession was voluntary. *Wolf*, 813 F.2d at 974. "Due process does not bar the use of a confession unless government officials employed coercive interrogation tactics which rendered the defendant's confession 'involuntary' as a matter of law." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)).

■ The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." An involuntary statement by a defendant violates the Due Process Clause of the Fifth Amendment. *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473 (1986). Both physical and psychological pressure can lead to involuntary confessions. *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). While a confession accompanied by physical violence is *per se* involuntary, *see Stein v. New York*, 346 U.S. 156, 182, 73 S.Ct. 1077, 1091, 97 L.Ed. 1522 (1953), psychological coercion provokes no *per se* rule. *Haynes v. Washington*, 373 U.S. 503, 515, 83 S.Ct. 1336, 1344, 10 L.Ed.2d 513 (1963).

---

1. The original superseding indictment was in seven counts. After Miller's second trial, which resulted in guilty verdicts on six of the seven counts, the government dismissed the seventh count. Miller was convicted of bribery, conspiracy to commit espionage, copying national

defense information and delivering it to a foreign government, and communicating to a foreign government with the intent to harm the United States or aid a foreign government in violation of 18 U.S.C. §§ 201(c), 371, 793(b), 794(a) & (c); and 50 U.S.C. § 783(b) (1982).

■ In psychological coercion cases, we must consider the totality of the circumstances involved and their effect upon the will of the defendant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226–27, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Guerrero*, 847 F.2d 1363, 1365–66 (9th Cir.1988). The pivotal question in each case is whether the defendant's will was overborne when the defendant confessed. *Schneckloth*, 412 U.S. at 225–26, 93 S.Ct. at 2046–47; *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir.1981).

Miller argues that three aspects of his interrogation render his statements inadmissible.

### A

■ Miller argues that the "continual and unrelenting" pace of the questioning exhausted him. The record does not support this contention.

Miller was not in custody during the interrogation; he was free to leave at any time. The interviewing agents gave him meal breaks, bathroom breaks upon request, and allowed him to telephone his wife. At his request, the location of the questioning was changed so that his fellow FBI agents would not learn of the interrogation. Miller returned home alone each night but one, when he was accompanied home for a consent search. Because that search lasted until 3:00 a.m., Miller did not return for interviews the next day until noon. On October 2, the FBI terminated the interviews at Miller's request. Although Miller was not in custody, he was continually advised of and waived his *Miranda* rights.

### B

■ Miller claims that the FBI agents deceived him as to the true nature and scope of the investigation. The record does not support this allegation. On September 28, Miller told the interviewing agents that he felt he had become the bad guy and that it was apparent to him that this was an espionage investigation. On September 29, one of the agents told Miller that he was involved in an espionage investigation. At the beginning of another interview, Miller wrote a statement indicating that he was foregoing a prior family commitment "in order to resolve the question of whether or not I have furnished classified documents to [Svetlana]." Each of the polygraph consent forms indicates Miller's awareness that he was the subject of an espionage investigation.

■ The FBI did not deceive Miller. However, even if they had, deception does not render confession involuntary. *See Frazier v. Cupp*, 394 U.S. 731, 737–39, 89 S.Ct. 1420, 1423–24, 22 L.Ed.2d 684 (1969). "[A]s long as th[e] decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." *Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986) (citations omitted) [hereinafter *Miller II*].

### C

■ Miller argues that Special Agent Bretzing improperly coerced a confession from Miller by appealing to his religious beliefs.

On September 29, Special Agent Bretzing spoke to Miller for fifteen to twenty minutes in the presence of another agent. Bretzing was the Special Agent in Charge of the investigation; he was also a bishop in the Mormon church. Bretzing recorded his conversation with Miller in a memo in the file:

I expressed my concern over the events which had come to my attention involving him. I suggested to him that while he probably recognized the legal, social and moral ramifications of the activities about which he was interviewed, I wondered if he had considered those spiritual ramifications. I reminded him of the beliefs he had once held that included the need to repent when one transgressed a law or offended someone. I reminded him that this belief stipulated the need not only for confession to the offended parties, but for restitution for the wrongful act. I suggested to him that restitution in this instance included a candid

account of all that had taken place, so that an assessment could be made of the harm done and that an unburdening of himself might also be accomplished. I reminded him that he had a wife and eight children who needed someone in his position to respect and that it was his responsibility to find the courage and the decency within himself to once again develop those attributes which would earn their respect. I stated that in my opinion, honesty in this particular matter was the first step in that direction.

When SA MILLER began to repeat his denials, I interrupted him and told him I would prefer his silence to a repetition of those denials he had been giving us for the last two days. I asked him again to ponder on what I had said over the night. . . .

There is no real question about what was said; the argument centers on how these statements affected Miller. There is no evidence to show that Miller's will was "overborne." The record shows no causal relationship between Agent Bretzing's lecture and Miller's confession two days later. At the August 1991 suppression hearing, Miller admitted that his confession to espionage had nothing to do with religion. Nothing in the record indicates his decision to confess was anything other than "the product of a rational intellect and a free will." *Tingle*, 658 F.2d at 1335 (quoting *Blackburn v. Alabama*, 361 U.S. at 208, 80 S.Ct. at 280).

 The test of voluntariness is not a "but-for" test. "[W]e do not ask whether the confession would have been made in the absence of the interrogation. Few criminals feel impelled to confess to the police purely of their own accord, without any questioning at all. . . . Thus, it can almost always be said that the interrogation caused the confession." *Miller II*, 796 F.2d at 605.

At the time, Miller was 48 years old, college educated, and a twenty year veteran Special Agent of the FBI. For approxi-

mately fifteen of his years with the FBI, Miller was a criminal investigator. Although Miller did become tearful after listening to Agent Bretzing, "mere emotionalism and confusion" do not necessarily invalidate confessions. *Sullivan v. Alabama*, 666 F.2d 478, 483 (11th Cir.1982).

Considering the totality of the circumstances and the particularities of this case, we do not find that Miller's will was overborne. We affirm the district court's denial of Miller's motion to suppress statements as involuntary.

## III

 During the second week of the third trial, Miller moved to suppress wiretap evidence obtained pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801–1811, on the grounds of failure to minimize, §§ 1801(h) and 1805(b)(2)(A). Miller had raised this issue prior to and during the first trial. At that time, both parties fully briefed and argued the motion. Each time Miller raised the issue during the *first* trial, Judge Kenyon denied the motion to suppress. Here in the third trial, Judge Takasugi denied the motion as untimely.

The district court's denial of defendant's mid-trial motion to suppress electronic surveillance evidence is reviewed for abuse of discretion. *United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir.1984); *United States v. Restrepo–Rua*, 815 F.2d 1327, 1329 (9th Cir.1987).

Fed.R.Crim.P. 12(b)(3) requires all motions to suppress evidence to be made prior to trial. Fed.R.Crim.P. 12(f) provides that failure to comply with Rule 12(b)(3) constitutes waiver; Rule 12(f) also provides that the court may grant relief from the waiver "for cause."[2] Miller asserted no new grounds for suppression. No "cause" existed for relief from the waiver of Rule 12(b)(3) & (f); there was no abuse of discretion.

---

2. FISA § 1806(e) also requires motions to suppress evidence obtained under its authority to be made before trial. Failure to comply with

§ 1806(e) constitutes a waiver of any objection to the evidence. *United States v. Duggan*, 743 F.2d 59, 79 (2d Cir.1984).

The decision of the district court is
AFFIRMED.