9 F.3d 1555
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael James RICONOSCIUTO, Defendant-Appellant.
 No. 92-30200.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 31, 1993.*
Decided Oct. 27, 1993.
 
 Before: WALLACE, Chief Judge, BOOCHEVER, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Michael Riconosciuto appeals his conviction and sentence for various narcotics offenses, including conspiracy to manufacture and distribute methamphetamine, distribution of methamphetamine and methadone, and possession with intent to distribute methamphetamine. He argues that the district court erred by (1) admitting evidence obtained in violation of the Fourth Amendment; (2) failing to find that the government's destruction of evidence violated due process; and (3) sentencing him based on an erroneous calculation of the amount of drugs involved in the offenses. We affirm.
 
 I. Fourth Amendment Claim
 
 3
 Riconosciuto argues that the searches of his property outside Tonasket, Washington in early April 1993 and a shack in Home, Washington on April 10, 1993, violated the Fourth Amendment because they were conducted without a search warrant. Additionally, he asserts that no exigent circumstances existed to justify a warrantless search and that, therefore, the evidence obtained from the searches should have been suppressed.
 
 
 4
 Fed.R.Crim.P. 12(b)(3) requires a party to raise a motion to suppress evidence before trial. According to Fed.R.Crim.P. 12(f),
 
 
 5
 Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court ... or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.
 
 
 6
 The issue, therefore, is whether Riconosciuto waived his objections to admitting the evidence obtained from these searches. Before summation, defense counsel raised for the first time the argument that the evidence obtained from the Tonasket search should be suppressed under the Fourth Amendment. Defense counsel explained the timing of the motion as follows:
 
 
 7
 [T]he defense had originally brought a motion to suppress evidence on the basis of a violation of the Fourth Amendment. The court indicated that those motions could be heard during trial or any time after that. So we waited until all the evidence was in, and we thought at this point would be the appropriate time to raise that issue.
 
 
 8
 The pretrial motion to suppress based on a Fourth Amendment violation related to documents obtained from Riconosciuto's jail cell, not the evidence obtained from the Tonasket search. Nevertheless, the court ruled that the Tonasket search complied with Fourth Amendment requirements without commenting whether Riconosciuto was entitled to relief from waiver of the issue. Additionally, defense counsel objected to the legality of the Home search when the government sought to admit evidence obtained from the search. The court admitted the evidence again without addressing the issue of waiver.
 
 
 9
 We hold that although motions to suppress the evidence obtained from the Tonasket and Home searches were not raised pretrial, the district court implicitly granted relief from waiver by ruling on Riconosciuto's objections to the evidence. This was not an abuse of the district court's discretion. United States v. Miller, 984 F.2d 1028, 1032 (9th Cir.) (whether relief from waiver should be granted reviewed for abuse of discretion), cert. denied, 1993 WL 303714 (Oct. 4, 1993). Accordingly, we reach the merits of Riconosciuto's Fourth Amendment arguments.
 
 
 10
 Agent Patrick Gregory of the Drug Enforcement Administration testified to the circumstances surrounding the search of the Tonasket property. Agent Gregory stated that on the morning of April 3, 1991, law enforcement agents went to a large piece of property in a rural area of Tonasket where they suspected Riconosciuto had operated a methamphetamine manufacturing facility. The property contained several mobile homes, a log cabin, and several vehicles. Agent Gregory testified that, without a search warrant, law enforcement agents broke down an electronic gate, entered the premises, and secured the property so as to preserve any evidence. In securing the property, the agents checked to make sure nobody was present, but they did not enter any of the buildings or vehicles on the property. Sheriffs deputies remained on the property while other law enforcement agents left to obtain a search warrant. A warrant was issued the evening of April 3, 1991. The agents executed the warrant on April 4 and 5 and obtained evidence that was later admitted at trial.
 
 
 11
 Contrary to Agent Gregory's testimony, Robert Cupples, on behalf of the defendant, testified that he saw numerous people on the property the evening of April 3. He stated that he observed a van door being opened and various people carrying boxes, packages, and other items. The district court rejected Cupples' testimony as not credible and accepted Agent Gregory's version of the events surrounding the search of the property. The court held that the government took initial steps to secure the property to prevent the loss of evidence pending the issuance of a warrant, that these steps were reasonable under the circumstances, and that there was no showing that the search warrant was issued based on information obtained during the initial entry onto the property.
 
 
 12
 We review de novo whether a search violates the Fourth Amendment. United States v. Vasey, 834 F.2d 782, 785 (9th Cir.1987). The district court's factual findings underlying its decision on the legality of a search are reviewed for clear error. Martinez v. Nygaard, 831 F.2d 822, 826 (9th Cir.1987).
 
 
 13
 Riconosciuto does not challenge the validity of the search warrant or the search pursuant to the warrant which occurred on April 4 and 5. Furthermore, we do not find clearly erroneous the district court's finding that law enforcement agents went onto the property on April 3 without entering any of the buildings or vehicles. Therefore, we are faced with the issue whether the government's entry onto the property on April 3 was an unconstitutional search.
 
 
 14
 We need not address this issue, however, because assuming arguendo that securing the property without a warrant on April 3 was an unconstitutional search, no evidence was seized during that operation. Moreover, we are presented with nothing to suggest that the probable cause for issuing the warrant was based on information obtained from the initial securing of the property. Accordingly, we hold that no evidence admitted against Riconosciuto was obtained by an unconstitutional search of the Tonasket property or pursuant to a warrant tainted with information gathered during an unconstitutional search.
 
 
 15
 Regarding the search of the Home property, Judy Smith, an acquaintance of Riconosciuto, testified that she received a phone call from Riconosciuto while he was in jail. She stated that Riconosciuto asked her to go out to the Home property to retrieve a bag for him. After going to the property as instructed, Smith found a bag containing what she determined to be methamphetamine. On April 10, 1991, Smith led law enforcement officials to the Home property where she found the bag. Detective Ronald Ritter of the Washington State Patrol testified that the property had several abandoned buildings, all of which lacked doors and windows, and some of which lacked siding and roofing. The property was accessible only by dirt road.
 
 
 16
 Smith took the officers into an abandoned shack and showed them the bag of methamphetamine located on the dirt floor in the corner. Detective Ritter left the scene to obtain a search warrant. Agent Tom Phillips of the DEA, also on the scene, picked up the bag and remained with his vehicle until a search warrant was obtained. The warrant was issued, and the bag for was taken from the scene for testing.
 
 
 17
 "To contest the legality of a search and seizure, the defendant[ ] must establish that [he] had a 'legitimate expectation of privacy' in the place searched or the property seized." United States v. Padilla, 960 F.2d 854, 858 (9th Cir.1992) (quoting Rakas v. Illinois, 439 U.S. 128, 143-44 (1978)), reversed on other grounds, 113 S.Ct. 1936 (1993). The burden of establishing such a legitimate expectation of privacy is on the defendant. United States v. Davis, 932 F.2d 752, 756 (9th Cir.1991).
 
 
 18
 Riconosciuto has failed to establish a reasonable expectation of privacy in the abandoned shack. He has not asserted ownership, control, or any other basis for expecting privacy in the shack. We therefore hold that Riconosciuto is precluded from asserting Fourth Amendment rights in the search of the shack.
 
 
 19
 Our holding that Riconosciuto has not demonstrated an expectation of privacy in the shack does not dispose of the question whether he had a legitimate expectation of privacy in the property seized, namely the bag of methamphetamine. We need not decide this question, however, because even assuming that the bag was seized in violation of the Fourth Amendment, we hold that it inevitably would have been seized through independent, lawful means. See Nix v. Williams, 467 U.S. 431, 447-48 (1984). That Detective Ritter obtained a warrant to seize the evidence after Agent Phillips retrieved the bag demonstrates by a preponderance of the evidence that the bag would have been seized lawfully. See United States v. Mancera-Londono, 912 F.2d 373, 375 (9th Cir.1990). Accordingly, we affirm the district court's decision to admit the evidence.
 
 
 20
 II. Destruction of Potentially Exculpatory Evidence
 
 
 21
 Riconosciuto argues that the government destroyed all of the containers, glassware, and other items seized during the Tonasket search, which, if tested, could have demonstrated that the property was being used to refine and process platinum rather than to manufacture methamphetamine and methadone.
 
 
 22
 We need not address the substance of this claim because Riconosciuto waived his right to appeal this issue. Riconosciuto filed three pretrial motions in the district court, including one seeking dismissal of his indictment based on the government's destruction of evidence. The trial judge suggested that a decision on the motions might best be made after the facts had been developed at trial. He stated:
 
 
 23
 I'm not sure exactly what additional information or showing the defense wanted to make in regard to these things, and I guess the first question is how it's appropriate to proceed on these motions. One thing that crossed my mind is that it may well be that these things will be covered during the course of the evidence at trial and might be more properly disposed of in the course of trial.
 
 
 24
 The defense attorneys agreed to this proposal. One of Riconosciuto's attorneys responded to the suggestion:
 
 
 25
 I believe that the proposal you made regarding addressing these issues during the trial or waiting until further information comes out as trial proceeds is a good one.... [W]e would prefer to have additional information before the court before the court makes a determination on those motions.
 
 
 26
 Riconosciuto thus chose to wait until trial to see how the evidence in support of the motion to dismiss developed. Implicit was the possibility that he could choose not to pursue the motion if the evidence was weak.
 
 
 27
 Subsequently, during the trial, some witnesses were questioned regarding the government procedure for destroying evidence, and defense attorneys sought to elicit testimony showing that the physical evidence might have been valuable to their case. It is therefore evident that the issue was not forgotten. At the end of the trial, however, the defense did not recall the pretrial destruction of evidence motion to the court's attention, nor move for a due process dismissal.
 
 
 28
 Notably, the defense did renew a different pretrial motion, its motion to suppress certain evidence, which was dismissed. Their explicit discussion of one of the deferred pretrial motions at the end of the trial clearly demonstrates that Riconosciuto and his attorneys knew that the pretrial motions had not been decided. Riconosciuto and his attorneys thus appear to have made a strategic decision not to pursue the deferred motion to dismiss. This results in a waiver of that issue. See United States v. Buffington, 815 F.2d 1292, 1304 (9th Cir.1987) (defendant's failure to address many of the arguments made in his pretrial motion to dismiss resulted in waiver of those claims); United States v. Paduano, 549 F.2d 145, 148 (9th Cir.) (trial strategy not to object to entrapment instruction waived objection to instruction on appeal), cert. denied, 434 U.S. 838 (1977); Sanassarian v. California, 439 F.2d 703, 703-04 (9th Cir.) (per curiam) (defendant waived any claim of deprivation of a fair trial based on argument that prosecutor's failure to introduce evidence referred to by defendant created an appearance that defendant was lying, because defendant and his attorney knew about the evidence and consciously chose not to introduce it to rehabilitate defendant), cert. denied, 404 U.S. 881 (1971); Curry v. Wilson, 405 F.2d 110, 112 (9th Cir.1968) (trial strategy not to object to evidence obtained in violation of defendant's constitutional rights was binding waiver of the objection), cert. denied, 397 U.S. 973 (1970).
 
 
 29
 Accordingly, we do not address the merits of Riconosciuto's destruction of evidence claim.
 
 
 30
 III. Calculation of Base Offense Level for Sentencing
 
 
 31
 Riconosciuto also challenges the district court's calculation of the base offense level for his sentence as 38. He argues that the district court improperly relied upon a calculation of the capacity of the Tonasket methamphetamine lab using the most abundant precursor chemicals found at the site. Additionally, he asserts that the methodology used for calculating the capacity of the lab was flawed. We review findings of fact underlying a sentence for clear error. United States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990), cert. denied, 111 S.Ct. 1335 (1991).
 
 
 32
 In calculating Riconosciuto's base offense level as 38, the Presentence Report relied upon a report from the government's forensic chemist, Roger Ely, that the Tonasket facility had the capacity of producing 13.6 kilograms of methamphetamine and 45.8 kilograms of methadone based upon the most abundant precursor chemicals found. The district court held that the analysis was correct and that the evidence supporting the base offense level of 38 was satisfactory. We have rejected Riconosciuto's argument that "the court's calculation of lab capacity is limited by the quantity of the least abundant precursor chemical." United States v. Lillard, 929 F.2d 500, 504 (9th Cir.1991); United States v. Putney, 906 F.2d 477, 478-80 (9th Cir.1990). Indeed, not even all the chemicals necessary to produce a controlled substance need be present at a lab site for a court to rely on precursor chemicals to estimate a lab's production capacity. United States v. Bertrand, 926 F.2d 838, 846-47 (9th Cir.1991). Thus the district court's calculation of the base offense level using the production capacity of the Tonasket lab based on the most abundant precursor chemicals found was not clear error.
 
 
 33
 Moreover, we find meritless Riconosciuto's challenge to Ely's methodology in calculating the production capacity of the Tonasket lab. Riconosciuto's citation to United States v. Robison, 904 F.2d 365, 371-72 (6th Cir.), cert. denied, 498 U.S. 946 (1990), is misplaced. In that case, the court found clearly erroneous the district court's reliance on the guesses of a drug addict who suffered from partial memory loss to calculate the quantity of drugs involved in the offense. In this case, Ely testified how methamphetamine and methadone are manufactured and how precursor chemicals can be used to estimate the production capacity of a manufacturing facility. We have no reason to believe that the district court's reliance on the chemist's testimony and report was clearly erroneous. Accordingly, we affirm Riconosciuto's sentence.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3