45 F.3d 436
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Alfredo Jimenez MONTEON, Petitioner-Appellant,
v.
James H. GOMEZ, Director; Attorney General of the State of
California, Respondents-Appellees.
 No. 93-55990.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 3, 1994.*
Decided Dec. 19, 1994.
 
 Before: WIGGINS, KOZINSKI and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Alfredo Jimenez Monteon appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. He contends his confession should have been suppressed, because before he confessed he was "softened up" by an off-duty police sergeant who was also a church minister.
 
 
 3
 The district court had jurisdiction under 28 U.S.C. Sec. 2254 (1988). We have jurisdiction under 28 U.S.C. Sec. 1291 (1988), and we affirm.
 
 FACTS
 
 4
 The Los Angeles Police Department obtained a warrant for Monteon's arrest for robbery, murder and arson. He remained at large for four years. In the interim, he became a Christian and joined the Apostolic Assembly of Woodland, California. Monteon's pastor helped arrange a meeting between him and Carroll Rick Faulkner, a licensed chaplain with the California Christian Prison Fellowship. Faulkner was also a police sergeant for the City of Los Angeles.
 
 
 5
 The two met at a church affiliated with Monteon's church. There, Faulkner encouraged Monteon to turn himself over to the police. They prayed together, but did not discuss the nature or details of Monteon's alleged crimes. At some point during their meeting, Monteon said maybe he should see an attorney before talking to the police. He also gave Faulkner a card of the investigating officer, Detective Richard Kennerly. Kennerly had left the card at Monteon's house. Faulkner called Kennerly, and Kennerly came to the church and arrested Monteon. After taking Monteon to the police station, Kennerly advised him of his Miranda rights. Monteon agreed to talk to Kennerly without a lawyer present and confessed to the crimes.
 
 STANDARD OF REVIEW
 
 6
 We review a district court's denial of a habeas corpus petition de novo. Krantz v. Briggs, 983 F.2d 961, 963 (9th Cir.1993). We accord a presumption of correctness to state court findings of fact that are "fairly supported by the record." 28 U.S.C. Sec. 2254(d)(8); Sumner v. Mata, 455 U.S. 591, 592 (1982). The presumption of correctness does not apply to mixed questions of law and fact, but it does apply to the facts that underlie an ultimate conclusion. Sumner, 455 U.S. at 597; Hamilton v. Vasquez, 882 F.2d 1469, 1471 (9th Cir.1989) (citation omitted).
 
 DISCUSSION
 A. Right to Counsel
 
 7
 Monteon was not subject to custodial interrogation during his conversation with Faulkner; therefore, he could not invoke his Fifth Amendment right to counsel at that time. Absent some form of custodial interrogation, the Fifth Amendment cannot "be invoked to shield an accused from the effects of his uncounseled confession." Murphy v. Holland, 776 F.2d 470, 484 (4th Cir.), vacated on other grounds, remanded, 475 U.S. 1138 (1985) (citing Edwards v. Arizona, 451 U.S. 477, 485-86 (1981)); see Illinois v. Perkins, 496 U.S. 292, 296 (1990).
 
 
 8
 Interrogation is either express questioning or conduct designed to elicit incriminating responses. Rhode Island v. Innis, 446 U.S. 291, 300-02 (1980); United States v. Henley, 984 F.2d 1040, 1042-43 (9th Cir.1993). A suspect is in custody when, based upon a review of all the relevant facts, a reasonable innocent person in such circumstances would conclude after brief questioning he or she would not be free to leave. Krantz v. Briggs, 983 F.2d at 963.
 
 
 9
 Faulkner's appeal to Monteon's religious convictions did not amount to interrogation for the purposes of Miranda, because his statements were not likely to lead to an incriminating response about the facts of the case. Innis, 446 U.S. at 300-02; Henley, 984 F.2d at 1042-43. Faulkner and Monteon never talked about the crimes for which the police sought Monteon. Instead, Faulkner encouraged Monteon to turn himself in to the authorities and to cooperate with them, because God approved. At most, Faulkner's statements merely addressed Monteon's pre-existing concern for religious salvation--i.e., doing right in the eyes of God.
 
 
 10
 Monteon was not in custody when he was speaking with Faulkner, because a reasonable person would have felt free to leave under the circumstances. Monteon set up the encounter with Faulkner through the minister of his church. Monteon willingly met with Faulkner at a church. Faulkner was not dressed in a police uniform and was introduced as "Brother Faulkner." The two prayed together and discussed the religious aspects of surrendering to the police. Nothing about their meeting suggested Monteon was "in custody," until Faulkner telephoned Kennerly. Even then, Faulkner did not interrogate Monteon, and Monteon made no incriminating statements to him.
 
 B. Voluntariness of Confession
 
 11
 "An involuntary statement by a defendant violates the Due Process Clause of the Fifth Amendment." United States v. Miller, 984 F.2d 1028, 1030 (9th Cir.), cert. denied, 114 S.Ct. 258 (1993). The test is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir.1990) (citation omitted), cert. denied, 112 S.Ct. 161 (1991); see also Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citations omitted). Thus, coercive police activity "is a 'necessary predicate' to finding a confession involuntary.... There must be some causal connection between the police conduct and the confession." United States v. Kelley, 953 F.2d 562, 565 (9th Cir.1992) (citing Colorado v. Connelly, 479 U.S. 157, 167 (1986)).
 
 
 12
 Monteon's allegation that Faulkner illegally induced him into confessing by promising to tell the district attorney of his cooperation is without merit. Faulkner was not an interrogating agent, but even if he were "[a]n interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a later statement involuntary, even when accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." See United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir.1993).
 
 
 13
 Nor did Faulkner's religious conversation with Monteon amount to coercion, rendering his confession involuntary. An appeal to a defendant's religious beliefs does not render a confession involuntary unless the defendant's will was overborne. Miller, 984 F.2d at 1031-32.
 
 
 14
 Monteon's will was not overborne. His concern for salvation and decision to tell the truth, in accordance with his faith, existed prior to his conversation with Faulkner. Monteon testified, "I felt that it was my duty as a Christian to do what is right in the eyes of the Lord...." Detective Kennerly also testified Monteon had mentioned his reason for confessing stemmed from a religious experience that occurred a year and a half before he confessed. Thus, Monteon's confession was the product of his own pre-existing religious beliefs, not of police coercion, and it was voluntary. Welch v. Butler, 835 F.2d 92, 95 (5th Cir.1988) (prayer session with police officer where defendant confessed crime did not constitute police coercion when defendant's concern for doing the religiously correct thing was a pre-existing concner), reh'g denied sub nom. Van Welch v. Butler, 842 F.2d 329 (en banc), and cert. denied, 487 U.S. 1221 (1988); see Miller, 984 F.2d at 1031-32 (appeal to religious beliefs is not coercion unless it overbears defendant's will).
 
 C. Voluntariness of Miranda Waiver
 
 15
 Monteon argues his discussion with Faulkner rendered involuntary his decision to waive his Miranda rights when he later spoke to Detective Kennerly. We reject this argument.
 
 
 16
 Because Monteon's confession was voluntary under the Fourteenth Amendment, his waiver of Miranda rights was also voluntary. See Bautista-Avila, 6 F.3d at 1365 (holding the determination that a confession was voluntary is tantamount to a determination that a Miranda waiver is voluntary) (citing Derrick, 924 F.2d at 820). The remaining question is whether Monteon's waiver was knowing and intelligent. See id.
 
 
 17
 On habeas appeal, "a state trial court's determination that a defendant knowingly and intelligently waived his Miranda rights is entitled to a presumption of correctness pursuant to section 2254(d)." Derrick, 924 F.2d at 823.
 
 
 18
 The record supports the state court's determination that Monteon's waiver was knowingly and intelligently made. Before Detective Kennerly arrived at the church and before the Miranda warnings, Faulkner asked Monteon if he knew he had "certain constitutional rights and that the investigator [Kennerly] would inform him of them before he talked to him." Monteon replied, "yes, I know." Due to a faulty tape recorder, the police explained Monteon's Miranda rights to him three times. At trial, when asked if he understood the nature of the rights he had waived, Monteon replied, "I understood."
 
 
 19
 We conclude Monteon knowingly and intelligently waived his Miranda rights, and his waiver was voluntary.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3