FILED

NOT FOR PUBLICATION

NOV 03 2016

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10405 |
| Plaintiff-Appellee, | D.C. No. 1:14-cr-00013-RVM-1 |
| v. | |
| FLOYD MAFNAS MENDIOLA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Ramona V. Manglona, Chief Judge, Presiding

Argued and Submitted October 20, 2016
Honolulu, Hawaii

Before: WALLACE, FARRIS, and WATFORD, Circuit Judges.

**1.** The district court properly denied Floyd Mendiola's motion to suppress the statements he made during the April 2014 meeting with the FBI. Mendiola was not in custody during the interview, so there was no need to advise him of his *Miranda* rights.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

This court uses five factors to determine whether someone is in custody: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (quoting *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)). While the second and fourth factors arguably favor Mendiola, we conclude that the other three factors weigh against a finding of custody.

When a suspect voluntarily agrees to meet with police with an understanding that questioning will ensue, the first *Kim* factor weighs against a finding of custody. *See United States v. IMM*, 747 F.3d 754, 766 (9th Cir. 2014). That is the situation here. FBI Agent McDoulett testified that he "asked Mr. Mendiola if he would come to [the FBI] office to listen to some recordings," and Mendiola testified that he voluntarily went to the FBI office in response to this request. Although Mendiola had been admonished to abide by the FBI's instructions as a condition of his cooperation, that does not undermine the voluntariness of Mendiola's compliance with Agent McDoulett's request.

Turning to the third *Kim* factor, Mendiola was in the same conference room he had been in during previous meetings with FBI agents, so the surroundings were

familiar. He was not isolated from the outside world: He had access to his cell phone and access to the door, which was not blocked. We conclude that the surroundings also weigh against a finding of custody.

As to the fifth *Kim* factor, the FBI acknowledged that it put pressure on Mendiola briefly during questioning, but the district court could properly find that the pressure exerted did not rise to the level associated with detention. Mendiola was not patted down, handcuffed, or otherwise restrained, and the FBI agents were wearing plainclothes and had concealed any weapons they were carrying.

Under the totality of the circumstances, we conclude that Mendiola was not restrained in a way that is associated with a formal arrest, *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam), especially when his previous meetings with the FBI are considered. He testified that he went to these meetings voluntarily (during which he was told that he was not under arrest) and that on each occasion he was able to leave freely after the meetings ended.

The Third Circuit's decision in *United States v. Jacobs*, 431 F.3d 99 (3d Cir. 2005), is distinguishable. There, Jacobs was told to come to the FBI offices immediately, and when she asked why, the agent declined to answer. *Id.* at 106. The court noted that the pressure Jacobs felt to comply with this order was increased by the fact that her handler had, over the course of their ten-year

relationship, paid her for information and used his position to influence the criminal justice system to help her. *Id*. When Jacobs arrived at the FBI offices she had to wait for thirty minutes in a room where suspects are interviewed, processed, and detained, and then had to leave her five-year-old son in the interview room while she met with the FBI agent. *Id*. at 103. Lastly, the court in *Jacobs* found that she was questioned in a way that was confrontational and intimidating. *Id*. at 107. None of those facts is present here.

**2.** The district court correctly concluded that Mendiola's statements were voluntary. His status as a confidential informant cannot be said to have overcome his will, especially since he was familiar with law enforcement techniques and testified that he had been advised that his decision to cooperate was voluntary. It is true, as Mendiola notes, that the FBI promised to inform prosecutors about Mendiola's cooperation, but Agent McDoulett made clear that the FBI could not promise him immunity from prosecution. As a result, this promise did not render Mendiola's statement involuntary. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). Nor does the fact that Agent McDoulett failed to inform Mendiola that the FBI had decided to stop using him as a confidential informant render his statements involuntary. While the agent's tactics undoubtedly amounted to deception, we have held that deception does not render a confession

involuntary. *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).

Because the agent never promised Mendiola that his statements would not be used

against him, the Third Circuit's decision in *Jacobs* is again distinguishable. 431

F.3d at 110.

**3.** Even though Mendiola has been released from prison and his supervised

release term is set by statute, his challenge to the district court's refusal to grant

him a reduction for minor role is not moot. *See United States v. Montenegro-Rojo*,

908 F.2d 425, 431 n.8 (9th Cir. 1990). We conclude that the district court did not

abuse its discretion in denying the reduction. The court permissibly concluded that

Mendiola's behavior of bringing together the buyer and seller, arranging the price

and location of the buys, and allowing use of his residence for one of the buys, did

not warrant a minor role reduction. The district court incorrectly recited language

from the commentary to U.S.S.G. § 3B1.2 that has since been removed by

amendment, but that language related to the reduction for *minimal* role and its

removal from the Guidelines does not call into question the district court's denial

of a reduction for minor role.

**AFFIRMED**.