**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　v.

GLENN HELLER,
　　　　　*Defendant-Appellant.*

No. 07-30452

D.C. No.
CR-07-00002-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
August 28, 2008—Seattle, Washington

Filed January 8, 2009

Before: Michael Daly Hawkins, M. Margaret McKeown, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge McKeown

**COUNSEL**

Anthony R. Gallagher, Federal Defender, and Michael Donahoe, Senior Litigator, Federal Defenders of Montana, Helena, Montana, for the defendant-appellant.

William W. Mercer, United States Attorney, and Kurt G. Alme and Marcia Hurd, Assistant United States Attorneys, Billings, Montana, for the plaintiff-appellee.

**OPINION**

McKEOWN, Circuit Judge:

Glenn Heller appeals his conviction following a bench trial for receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Heller's conviction stems from Heller's activities while serving as a caretaker for a developmentally disabled man, J.W. The government alleged J.W. downloaded child pornography at Heller's direction for their mutual viewing. Heller first challenges the district court's pretrial rulings related to his suppression motion and

his motion in limine. Heller next faults the district court's determination that his confession was voluntary. Finally, Heller asserts the government presented insufficient evidence at trial to support his conviction. We affirm his conviction.

## BACKGROUND

Between 2001 and 2004, Heller served as a caretaker for J.W., a 42-year-old developmentally disabled ward of the State of Montana. In 2004, Heller was terminated as caretaker because he was spending time with J.W. after hours. J.W. later disclosed to his guardian that he had a sexual relationship with Heller while Heller was his caretaker. Heller was convicted in Montana state court on charges of criminal endangerment and sexual assault. During the course of the prosecution, child pornography files were found on J.W.'s computer. Heller denied that he had any involvement with the pornography. Heller's home and home computer were searched but authorities found no child pornography.

In 2006, a Montana police officer stopped Heller on the street and told him that he needed to go to the station to update his sex offender registration. The officer told Heller that he was not under arrest and would not be arrested when he arrived at the station. Heller agreed to go to the station later that day.

Once at the station, Heller met with the officer for a compliance check of his sex offender registration requirements. The meeting took place in a small interrogation room, and the door was never shut. At the beginning of the encounter, the officer reminded Heller that he was not under arrest. After Heller finished filling out compliance paperwork, the officer told Heller he was free to leave the station. An FBI agent then entered the room and asked Heller if they could talk about child pornography Heller may have received while caring for J.W. Heller agreed to talk to the agent, but initially denied any involvement with J.W.'s child pornography collection. The

agent told Heller that new information had come to light since the state proceeding, including new statements made by J.W. and a box of compact discs ("CDs") containing child pornography. Heller stated that child pornography was saved on J.W.'s computer, and that one of the folders was entitled "glenn's files." Heller further acknowledged that he had a sexual relationship with J.W. and that they viewed child pornography together while engaging in sexual acts.

Throughout the questioning, the officer and the FBI agent reminded Heller he was free to leave and was not under arrest. After about an hour of conversation, Heller provided a written statement and initialed every line of a typewritten statement prepared by the officers. Once he finished his statements, Heller left the station. Heller was later indicted and convicted for one count of receipt of child pornography and one count of possession of child pornography.

## ANALYSIS

### I. THE PRE-TRIAL MOTIONS

Before trial, Heller moved to suppress the statements he provided to the officer and the FBI agent. The government filed a response to the suppression motion five days late, justifying its untimely reply by explaining that the parties had been negotiating a plea agreement and the government thought a response was unnecessary while negotiations were still pending.

The district court determined that the government's explanation was corroborated by the case file. Indeed, the record supports the government's position that plea negotiations were ongoing and, during this period, Heller's counsel even asked for an extension of the plea agreement deadline.

[1] The district court's determination that it would overlook the government's untimely filing was governed by Rule

12.1(c) of the Local Rules of Procedure for the United States District Court for the District of Montana, which states: "Failure to file briefs within the prescribed time may subject any motion to summary ruling." We review the district court's application of this local rule for an abuse of discretion. *See Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007) ("A district court's compliance with local rules is reviewed for 'an abuse of discretion.' " (quoting *Hinton v. NMI Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993))). "Only in rare cases will we question the exercise of discretion in connection with the application of local rules." *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) (per curiam).

**[2]** Rule 12.1(c) does not mandate a summary ruling for late filings. Rather, Rule 12.1(c) is permissive and a late filing "may subject [a] motion to summary ruling." In this instance, there is no indication the district court abused its discretion. The district court fairly considered the chronology of events documented by the parties. The discretionary determination to accept the late filing was not an abuse of discretion.

Heller also challenges the government's failure to respond to his motion in limine to preclude reference to his sexual relationship with J.W. and his related state court conviction. Before the government responded and before the court had the chance to rule on his motion, Heller waived his right to a jury trial. Heller feared potential jury bias could result if the jury were presented with "evidence of the homosexual relationship" between Heller and J.W. At the suppression hearing, in reference to Heller's request for a bench trial, the government informed the district court that Heller's motion in limine "may be a moot point" because there would be no jury if Heller had a bench trial.

**[3]** The district court made no express ruling concerning the government's failure to reply to Heller's motion in limine. The absence of a ruling is not surprising. The need for in limine motions was moot once it was clear that Heller had

waived his right to a jury trial. *See Johnson v. Doughty*, 433 F.3d 1001, 1007 (7th Cir. 2006) ("Johnson also had filed a motion in limine to restrict the defendants from mentioning his criminal history and prison disciplinary record at trial. (The motion later became moot when the matter was converted from a jury trial to a bench trial.)").

**[4]** The term "in limine" means "at the outset." Black's Law Dictionary 803 (8th ed. 2004). A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area. *See id.* at 1038-39. In the case of a jury trial, a court's ruling "at the outset" gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury. Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous. It would be, in effect, "coals to Newcastle," asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence. For logistical and other reasons, pretrial evidentiary motions may be appropriate in some cases. But here, once the case became a bench trial, any need for an advance ruling evaporated.

## II.  The Voluntariness of Heller's Confession

We now turn to the substance of Heller's suppression motion. Heller asserts that his confessions were involuntary because he was impaired by medication at the time he provided the handwritten and initialed statements to law enforcement. We review de novo the voluntariness of a confession and the factual findings supporting the determination for clear error. *United States v. Gamez*, 301 F.3d 1138, 1144 (9th Cir. 2002). The test is well known: we determine whether, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988).

Heller testified at the suppression hearing that he ingested a 7.5 milligram dose of Tylenol III with codeine ("Tylenol III") in the morning of the day he made his confessions. He took the medication because he suffered from an undiagnosed illness that caused him to experience uncontrollable movement of his legs. At the time of the confessions, he felt "tired" and his hands shook uncontrollably. Heller asserted the Tylenol III "led [him] to make bad decisions" and "slowed [him] down and made [him] sleepy." He explained that the medication, when coupled with being in a small meeting room with no windows for an extended time, made his confession involuntary, as he "didn't know what else to do except admit to what the police wanted [him] to admit."

After considering Heller's claim, the district court denied the motion to suppress, finding the confessions voluntary. *See United States v. Heller*, No. CR 07-02-H-CCL, 2007 WL 2358631, at *6, *10 (D. Mt. Aug. 17, 2007). The district court made detailed findings in response to Heller's motion. Significantly, it found Heller knew he was free to leave the interview. *Id.* at *3. The district court further determined the atmosphere of the interview was "friendly and cordial on all sides." *Id.* Regarding Heller's medication, the district court found that Heller did not inform the officer or the FBI agent about the medication, even though he had taken the pill that morning. *Id.* at *4. Heller appeared to the officer and agent "to be cognitively alert and able" and Heller admitted that the amount of medication "was a low dose." *Id.* Overall, the district court found Heller's "testimony regarding his inability to reason when he was interviewed by law enforcement on April 6, 2006, not to be credible." *Id.*

**[5]** Based on the record, the district court's determination that Heller believed he was free to leave and that the environment was "friendly and cordial," *id.* at *3, was not clearly erroneous. The questioning was not "extended and oppressive." *See United States v. Martin*, 781 F.2d 671, 674 (9th Cir. 1985). Heller was at the station for approximately two hours,

but questioning took place for about one hour, and the officers told Heller repeatedly that he was free to leave.

**[6]** Heller's argument concerning his medication goes to a slightly different inquiry—whether he was unable to exercise free will due to an impaired mental state. We are guided in this question by our decision in *Martin*.[1] Martin had received Demerol, a painkiller, and was groggy when a detective and a federal agent questioned him in the hospital. *Id.* at 672-73. Though he had ingested Demerol, Martin was awake and fairly coherent, and there was no evidence that he received excessive quantities or unusual combinations of drugs. *Id.* at 674. Like Heller, Martin "was not reluctant to tell his story." *Id.* We agreed with the district court's conclusion that the "type, dosage, and schedule of painkilling narcotic administered to [Martin] was not sufficient to overbear his will to resist the questioning or impair his rational faculties." *Id.* (alteration in original).

**[7]** As in *Martin*, Heller appeared "cognitively alert and able." *Heller*, 2007 WL 2358631, at *4, but, unlike the defendant in *Martin*, there was no suggestion that he was groggy. The district court found that Heller had ingested the Tylenol III at least two hours before he came to the station. Heller admitted that he took a "low dose," he was not rendered "unconscious" or "comatose," and there is no other evidence to suggest that the type, dosage, or timing of the Tylenol III influenced Heller's will to resist questioning. *See Martin*, 781 F.2d at 674. The district court did not clearly err in its determination that Heller's "reason and judgment were not impaired" by his prior ingestion of Tylenol III. *Heller*, 2007

---

[1]Heller urges us to look to *United States v. Howard*, 381 F.3d 873 (9th Cir. 2004), in which we determined an evidentiary hearing was appropriate to discern whether the defendant's use of a painkiller affected the voluntariness of his guilty plea. *Id.* at 881. *Howard*'s holding regarding the necessity of an evidentiary hearing is inapposite. Here, the district court's detailed findings followed an evidentiary hearing at which Heller and the officers testified.

WL 2358631, at *5. Heller's confessions were not the result of "physical or psychological coercion" such that his "will was overborne." *Leon Guerrero*, 847 F.2d at 1366. The district court properly determined that Heller's confessions were voluntary.

## III. THE SUFFICIENCY OF THE EVIDENCE

Finally, we consider Heller's assertion that the district court erroneously denied his Federal Rule of Criminal Procedure Rule 29 motion because the evidence was insufficient to support his conviction for receipt and possession of child pornography. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the defendant guilty of each element of the crime beyond a reasonable doubt. *United States v. Rosales*, 516 F.3d 749, 751-52 (9th Cir. 2008) (citing *United States v. Hinton*, 222 F.3d 664, 669 (9th Cir. 2000)).

**[8]** The parties stipulated that the movies on J.W.'s computer were child pornography and had been transported over the internet. Thus, we confront only the question whether the evidence is sufficient to demonstrate that Heller knowingly received and knowingly possessed child pornography. To establish receipt and possession of child pornography, there must be a " 'sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over [it].' " *United States v. Romm*, 455 F.3d 990, 999 (9th Cir. 2006) (quoting *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001)) (alteration in original).

Heller's primary focus is that J.W.'s actions—downloading and storing child pornography—may not serve as a proxy for Heller's own guilt. Heller reasons the government's theory that J.W. acted as a conduit to Heller's receipt and possession of child pornography is fatally undermined by two facts:

1) the evidence did not sufficiently demonstrate that the period in which J.W. downloaded the child pornography coincided with Heller's service as J.W.'s caretaker; and 2) the evidence shows J.W. downloaded and possessed child pornography both before and after his association with Heller. Thus, Heller argues, the evidence is insufficient to support his conviction beyond a reasonable doubt.

**[9]** We are not persuaded by Heller's characterization of the evidence. It is true that J.W. downloaded and possessed pornography for periods beyond the tenure of Heller's care taking. But this fact does nothing to change the evidence of what occurred while Heller served as the caretaker. The actual timeline just doesn't jibe with Heller's argument.

**[10]** Though J.W. physically performed the acts of downloading and storing the child pornography, Heller sought out the prohibited material, actively directed J.W. to obtain pornography, and "exercised dominion and control over it." *Romm*, 455 F.3d at 999. *See also United States v. Tucker*, 305 F.3d 1193, 1205 (10th Cir. 2002) (affirming a conviction for possession where defendant "intentionally sought out and viewed child pornography"). J.W. testified that Heller "wanted me to download" and asked J.W. to download movies involving boys; that it was Heller's idea to find and download movies depicting kids and young teenagers involved in sexual situations with adult men; and that they watched the downloaded movies together.

**[11]** Heller admitted that he "directed [J.W.] to download movies which contained child pornography," "directed him to save these movies onto his computer and then to a CD," and "directed him to download the child movies and keep them at his house because [Heller] did not want [his] wife to find out that [he] liked child pornography." J.W. saved the files and labeled CDs to remember which ones Heller liked. One CD was labeled "XXX Glenn." Heller had access to the porno-

graphic materials whenever he visited J.W., both on and off duty.

**[12]** Considering the evidence, Heller's challenge to his conviction falls short. The evidence demonstrates Heller directed J.W. to obtain the materials for Heller's viewing and that, once the files were downloaded and stored, Heller "exercised dominion and control over [them]." *Romm*, 455 F.3d at 999. This evidence, viewed in the light most favorable to the government, is sufficient to establish Heller received and possessed the materials. The district court did not err in denying Heller's Rule 29 motion.

**AFFIRMED.**