**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | No. 09-50543 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00746-FMC-4 |
| v. | |
| **LISA LIEVANOS**, | **MEMORANDUM**[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted February 8, 2011
Pasadena, California

Before:    **KOZINSKI**, Chief Judge, **HAWKINS** and **FISHER**, Circuit Judges.

Lievanos appeals multiple convictions and the sentence resulting from her

participation in a loan fraud conspiracy that submitted false loan applications to

subprime lenders in order to buy various properties.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.** Batson claims:  The prosecutor gave race-neutral reasons for exercising peremptory challenges to dismiss three African-American jurors.  See Batson v. Kentucky, 476 U.S. 79, 98 (1986); see also Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam).  Specifically, G. admitted that her religious beliefs would affect her ability to sit in judgment of Lievanos.  W. agreed with the district court that his family's negative experiences with subprime lenders created "emotional issues with this whole business of subprime lending."  L. wasn't candid about his previous work for a subprime lender.

The district court's finding that the dismissals weren't the result of purposeful racial discrimination is supported by the record.  See Snyder v. Louisiana, 552 U.S. 472, 477 (2008).  The prosecutor dismissed for cause a non-minority juror who shared G.'s religious scruples.  See Ali v. Hickman, 584 F.3d 1174, 1192–93 (9th Cir. 2009) (performing a comparative analysis to determine whether minority juror's religious belief was a pretext for purposeful discrimination).  And ample evidence supports the prosecutor's reasons for dismissing W. and L.

**2.** Suppression motion:  The record also supports the district court's finding that Lievanos's statements to the FBI were voluntary.  See United States v. Heller,

551 F.3d 1108, 1112 (9th Cir. 2009). The agents interviewed Lievanos in her home; they didn't coerce her or take any other steps that would have made the interviews custodial. See United States v. Crawford, 372 F.3d 1048, 1060–61 (9th Cir. 2004) (en banc); United States v. Haswood, 350 F.3d 1024, 1028 (9th Cir. 2003) (noting that coercion typically requires "outrageous conduct"). Their observation that Lievanos could go to jail wasn't a threat because she wasn't about to be arrested. Cf. United States v. Patayan Soriano, 361 F.3d 494, 502–03 (9th Cir. 2004). That the agents' stated reason for interviewing Lievanos was pretextual didn't render her statements involuntary. See Crawford, 372 F.3d at 1060–61 ("Trickery [and] deceit . . . do not render a [statement] inadmissible, certainly in noncustodial situations . . . ." (internal quotation mark omitted)).

**3.** Sufficiency of the evidence: Because Lievanos didn't renew her Rule 29 motion at the close of evidence, we review this claim "only to prevent a manifest miscarriage of justice, or for plain error." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201 (9th Cir. 2000). The government introduced extensive evidence that Lievanos was a willing participant in the loan fraud conspiracy and lied to the FBI about the $20,000 check. Based on this evidence, a rational fact-

finder could find Lievanos guilty of all charges against her.  See United States v. Nevils, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc).

The jury's acquittal of Lievanos on wire fraud in connection with one of the loans doesn't require the reversal of her conviction for laundering the proceeds of that loan.  Wire fraud requires "specific intent to defraud."  United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003); see also 18 U.S.C. § 1343.  Money laundering doesn't, so there's no inconsistency between the verdicts.  See 18 U.S.C. § 1957(a).  Lievanos's claim that her false statements were lawful "exculpatory no[s]" must fail because there's no such thing.  See Brogan v. United States, 522 U.S. 398, 401, 408 (1998).

**4.**  Restitution and sentencing:  The district court didn't abuse its discretion when it ordered Lievanos, in light of her participation in the loan fraud conspiracy, to pay restitution for the entire loss on one of the loans.  See United States v. Brock-Davis, 504 F.3d 991, 999 (9th Cir. 2007) ("[W]hen the crime of conviction includes . . . conspiracy . . . the restitution order [may] include acts of related conduct for which the defendant was not convicted." (emphasis and internal quotation marks omitted)); United States v. Lawrence, 189 F.3d 838, 846–47 (9th Cir. 1999).  The jury's acquittal of Lievanos on one wire fraud charge doesn't

render the restitution order an abuse of discretion.  See United States v. Booth, 309 F.3d 566, 571, 575–76 (9th Cir. 2002) (affirming restitution order for entire loss caused by scheme to defraud when jury convicted on some fraud charges and acquitted on others).

Lievanos conceded the substantive reasonableness of her prison sentence at the start of oral argument.

**AFFIRMED.**