NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-10-1383-KiSaPa |
| KEITH GRADY SPEIR and RHONDA LYNN SPEIR, | Bk. No.   09-14394-RR |
| Debtors. | |
| KEITH GRADY SPEIR; RHONDA LYNN SPEIR, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| LAWRENCE COLEMAN NOBLE, | |
| Appellee. | |

Argued and Submitted on May 13, 2011,
at Pasadena, California

Filed - September 26, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robin L. Riblet, Bankruptcy Judge, Presiding

Appearances:     Janet Audrey Lawson, Esq. argued for appellants, Keith Grady Speir and Rhonda Lynn Speir; Lawrence Coleman Noble, Esq. appellee, argued pro se.

Before: KIRSCHER, SARGIS[2] and PAPPAS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Ronald H. Sargis, Bankruptcy Judge for the Eastern District of California, sitting by designation.

Appellants, chapter 7[3] debtors Keith and Rhonda Speir ("Speirs"), appeal an order from the bankruptcy court denying their disgorgement motion against their former bankruptcy attorney, appellee, Lawrence Noble, Esq. ("Noble"). We VACATE the bankruptcy court's order and REMAND this matter with instructions that the bankruptcy court conduct an evidentiary hearing concerning the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. Prepetition Events**.

In August 2006, Speirs filed a complaint in state court against Steve and Leana Smith ("Smiths") for damages and rescission of a real estate contract. The matter was tried before an arbitrator in January 2009. An interim award in favor of Smiths was issued on March 19, 2009. In April 2009, Smiths moved for attorney's fees and costs from Speirs. Speirs opposed the motion. In July 2009, the arbitrator issued a revised award determining Smiths to be the prevailing party and awarding them a total of $203,412.57 for attorney's fees, costs, and interest.

Smiths subsequently learned that shortly after the interim award was issued on March 19, Speirs had engaged in what Smiths thought were fraudulent transfers of real property. On July 31, 2009, Smiths sued Speirs in state court to set the transfers aside.

On August 24, 2009, Smiths's revised award of $203,412.57 for attorney's fees and costs against Speirs became a judgment for

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

$206,327.57, plus interest.  In September 2009, Smiths attempted to conduct judgment debtor examinations of Speirs in aid of enforcement of the state court judgment.  Ms. Speir allegedly evaded service of the examination order.  On October 21, 2009, the day before Mr. Speir's scheduled debtor's examination, Speirs filed a chapter 7 bankruptcy petition, thereby staying the fraudulent transfer action.

**B.    Postpetition Events.**

**1.    Events leading up to Smiths's Rule 2004 motion.**

On February 2, 2010, Smiths moved for an order directing Speirs to submit to a Rule 2004 examination due to their inability to get Speirs to submit to one voluntarily.  To support their motion, Smiths submitted various letter and email correspondence between their counsel, Matt Guasco ("Guasco"), and Noble.  For the greater part of December 2009 and early January 2010, the parties argued over whether Speirs could appear by stipulation and notice rather than court order, whether Speirs had to produce documents going back one year or two years, and whether Speirs had to disclose their tax returns.

On January 6, 2010, Noble sent Guasco a letter again asserting that Speirs would not appear pursuant to a court order, but that his clients wished to "get on with the Rule 2004 examinations."  On January 8, 2010, Smiths agreed that Speirs could appear at their examinations and produce documents without a court order, provided that objections to production of documents were made in writing before the examinations.  Noble was receptive to the arrangement.  Accordingly, Guasco mailed Noble a revised, proposed stipulation for Noble's review.

-3-

On January 12, 2010, Guasco forwarded Noble a draft Rule 2004 notice of examination and production of documents for Noble's review, which proposed examination dates of January 21 and 29, 2010. Noble responded by letter dated January 14, 2010, stating that the proposed dates were "impracticable," and that Speirs refused to provide Smiths with copies of tax returns because their request was untimely. However, that same day, Noble told Guasco in a telephone conversation that the draft stipulation was acceptable, so Guasco emailed Noble a final version for Noble's signature.

Guasco sent emails to Noble on January 15, 18, and 19, 2010, because he had not yet received Noble's signature on the stipulation. Finally, on January 20, Noble called Guasco and stated, for the first time, that he had "several problems with the stipulation," that he needed "instructions" from Speirs, and that he would "get back" to Guasco. Guasco emailed Noble on January 21, asking Noble if he was going to sign the stipulation that day, to which Noble replied that he would not be hearing from his clients until the following day, January 22, and, in any event, the stipulation contained "many objectionable items." Guasco responded by email that same day demanding that Noble stop engaging in "purposeful delay" and sign the stipulation he had previously approved.

On January 22, 2010, Noble advised Guasco that he would not be representing Speirs at their Rule 2004 examinations, and that Guasco could now deal directly with Speirs in that regard. Smiths's Rule 2004 motion immediately followed. The bankruptcy court entered an order granting Smiths's Rule 2004 motion on

February 12, 2010.

**2.    Speirs's motion to disgorge Noble's fee.**

On March 17, 2010, Speirs, with new bankruptcy counsel Janet Lawson, Esq. ("Lawson"), filed a motion seeking to disgorge monies paid to Noble postpetition ("Disgorgement Motion"). According to the motion and a declaration from Ms. Speir, Speirs had paid Noble $4,201 prepetition to represent them in their chapter 7 case, for which Noble had filed a Rule 2016(b) statement. After the filing, Speirs paid Noble an additional $5,500 for which they alleged he provided no services and for which they received no bill. Speirs argued that they should not be billed for Noble delaying the Rule 2004 examinations as they "were always ready, able, and willing to attend the exam and produce the requested documents." Speirs further alleged that any amended schedules were filed only because of Noble's mistakes. Therefore, they demanded a refund of the allegedly unearned $5,500 fee.

Noble opposed the Disgorgement Motion. He explained that Speirs sought out his legal advice in response to Smiths's impending Rule 2004 examination, and that he provided postpetition services of at least $13,381 while advising Speirs about their disclosure obligations in the examination. Noble alleged that Speirs had made partial postpetition payments[4] to induce him to continue representing them while they considered their response to the Rule 2004 examination. According to Noble, Speirs's

---

[4] The record reflects that Noble received the $5,500 in several payments over a period of about one month. He received three $1,000 money orders and one $500 money order on December 22, 2009; he received two $1,000 money orders on January 20, 2010, which was just a few days before Speirs terminated him.

-5-

"obstinacy" caused him to spend an inordinate amount of time advising them to disclose information, to produce documents for the exam, and to get them to deliver rental income payments to the trustee. Noble further asserted that it was Speirs, not he, who insisted on appearing at the Rule 2004 examination only by stipulation and not a court order, which resulted in time consuming and costly negotiations with Guasco. Apparently, Speirs were concerned about being found in contempt of a court order if they provided unsatisfactory or incredible answers to Smiths's questions, thus providing Smiths a greater basis for potential litigation against them. Noble denied that amended schedules had to be filed because of his mistakes; he alleged any mistakes made were the fault of Speirs.

Attached to Noble's opposition was his declaration and three exhibits. Exhibit C was an email dated January 21, 2010, from Noble to Speirs, which Noble reluctantly submitted due to its privileged content. This was Noble's last contact with Speirs before they terminated him. In the email, Noble expressed his concern about Speirs's "contentious" behavior with him and that it appeared his advice was being "undermined" by Ms. Speirs's father, Rich Coleman. Noble also expressed his concern about the trustee's skeptical attitude regarding Speirs's conduct and her questioning of the "dubious 'legal' documents and explanations" Speirs had provided. Finally, Noble stated that the best way to discourage Smiths from litigation was by making a good showing at their Rule 2004 examinations, which would require an extensive document production and preparation for questioning.

Noble's Exhibit B was an email exchange between Lawson and

-6-

Noble dated March 30, 2010. This exchange was Lawson's response to Noble's prior email (see Exhibit A) to her about obtaining a protective order. Shortly after Speirs filed the Disgorgement Motion, Noble asked Lawson to enter into a protective order so that his opposition (which would include privileged emails and a detailed fee statement) would not aid creditors or the trustee in collecting assets from Speirs. Lawson rejected Noble's request, stating that Speirs needed no "protection" from him; they had disclosed all of their assets and had nothing to hide. Lawson alleged that it was Noble, not Speirs, that "made a mess of this" case; there were "no legitimate grounds to oppose the Rule 2004 examination."

Noble did not attach his fee statement to his opposition, which he contended contained information that could undermine Speirs's ability to obtain a discharge. However, Noble proposed producing it in camera at the hearing.

In their reply, Speirs contended that despite their requests for a copy of the fee statement, Noble had not yet provided one. Speirs objected to Noble's offer to produce it for the first time at the hearing because: (1) it would prevent them from having any meaningful opportunity to refute it; and (2) it violated the court's order setting hearing which stated that "no late filed pleadings will be considered."

In her second declaration, Ms. Speir complained extensively of Noble's incompetence. Particularly, she stated that his ignorance of bankruptcy law and his need to "research" everything unnecessarily prolonged the Rule 2004 examination process, not the Speirs's alleged "resistence." She further stated that Noble had

-7-

"pressured and scared" Speirs into filing bankruptcy in order to avoid Smiths's judgment debtor exams. However, Smiths accomplished the exact same thing with the Rule 2004 examinations, which Ms. Speir described as "no big deal." Finally, Ms. Speir alleged that prior to the second section 341 meeting of creditors Noble had told Speirs to not tell the trustee about monies they had paid him postpetition. Lawson also filed a declaration. She stated that she had no problems with Speirs, and that they produced all documents at the Rule 2004 examinations without complaint.

Despite his proposal to only submit the fee statement in camera, on June 2, 2010, the day before the Disgorgement Motion hearing, Noble filed his fee statement. It reflected that between December 16, 2009, and March 23, 2010, Noble had spent 38.9 hours in Speirs's case, including 3.2 hours on the disgorgement matter, for a total of $13,381 in fees. Noble did not serve Speirs with the fee statement.

The bankruptcy court held a hearing on the Disgorgement Motion on June 3, 2010. Noble finally provided Lawson with a copy of the fee statement just moments before the hearing. After Noble argued about his relationship with Speirs and the circumstances surrounding the Rule 2004 examinations which led to the January 21 email, the following colloquy ensued between Lawson and the court:

> LAWSON: If you look at the e-mail he's referring to, it says nothing about refusing to turn over documents. It's a demand for more money in the third paragraph. Things that don't make sense. There's nothing in here asking Speirs to turn over documents. Nothing he's attached supports what he's saying here today.

```
COURT:    But I don't have any evidence to the contrary
          do I, Ms. Lawson?

LAWSON:   Because this is the first point of raising
          it.  His January 21 letter does not address--

COURT:    You have a witness.  Are you not going to put
          your witness on?

LAWSON:   I wasn't aware this was an evidentiary
          hearing, your Honor.

COURT:    I don't see a room full of lawyers waiting
          their chance to have a hearing.

LAWSON:   I wasn't aware this was an evidentiary
          hearing, your Honor.
```

Hr'g Tr. (June 3, 2010) at 15:1-13.  The court then proceeded to issue its oral ruling in favor of Noble, but limiting the allowed fees to the $5,500 he had already received.

The bankruptcy court entered an order denying the Disgorgement Motion on September 28, 2010.  This appeal followed.

**II. JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

**III. ISSUE**

Did the bankruptcy court abuse its discretion by accepting the late-filed fee statement into evidence?

**IV. STANDARDS OF REVIEW**

A court's interpretation and application of a local rule is reviewed for abuse of discretion. United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's

-9-

application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

## V. DISCUSSION

**The bankruptcy court abused its discretion by accepting the late-filed fee statement into evidence without giving Speirs a reasonable opportunity to refute it.**

Speirs argue that accepting Noble's late-filed fee statement into evidence was prejudicial, a fundamental violation of due process, and it violated several local rules and the court's order. Speirs contend that had they been given an opportunity to review the fee statement prior to the hearing, they could have impeached Noble's statements that they were the cause of all of Noble's extra work, and they could have challenged many of Noble's time entries. Noble did not address this issue on appeal. We agree with Speirs.

Under the Central District's Local Bankruptcy Rule ("LBR") 9013-1(f)(1), opposition to a motion should contain "a complete written statement of all reasons in opposition thereto," and any "documentary evidence on which the responding party intends to rely." Any opposition papers must be filed and served on the moving party no later than 14 days prior to the hearing. LBR 9013-1(f)(1). A proof of service must also accompany every paper filed. LBR 9013-1(e).

Clearly, Noble did not comply with any of these local rules. Despite his reluctancy to file the fee statement and his offer to provide it in camera, Noble filed the fee statement just one day prior to the hearing on the Disgorgement Motion, and he did not

-10-

serve it on Speirs or file a proof of service.[5] Noble finally provided Lawson a copy of it just moments before the hearing. Speirs never had an opportunity to review the fee statement as they did not attend the hearing. The bankruptcy court said nothing about Noble's untimeliness or its order prohibiting any late-filed pleadings and proceeded to consider the fee statement, despite Speirs's objection to do so in their reply. Although Lawson did not expressly object at the hearing when the court accepted the fee statement into evidence, she did respond, twice, that she was unaware the court was conducting an evidentiary hearing.[6]

---

[5] Noble has never explained why he decided to file the fee statement and, even more importantly, why he filed it just one day before the hearing.

[6] Speirs also argue that the bankruptcy court's failure to advise them of its intent to take oral testimony was prejudicial because they were not there to refute the allegations Noble raised for the first time at the hearing. LBR 9013-1(i)(1) gives the bankruptcy court discretion to take oral testimony. It provides:

> The court may, at its discretion, in addition to or in lieu of declaratory evidence, require or allow oral examination of any declarant or any other witness in accordance with FRBP 9017. When the court intends to take such testimony, it will give the parties 2 days notice of its intention, if possible, or may grant such a continuance as it may deem appropriate (emphasis added).

The qualifying language in LBR 9013-1(i)(1) of "if possible" and controlling case law provides the bankruptcy court with broad discretion in applying its local rules. See Katz v. Pike (In re Pike), 243 B.R. 66, 69 (9th Cir. BAP 1999)(bankruptcy court has broad discretion to apply its local rules); Qualls, By and Through Qualls, v. Blue Cross of Cal., Inc., 22 F.3d 839, 842 (9th Cir. 1994)(appellate court rarely questions the lower court's exercise of discretion in connection with its application of the local rules).
Here, we cannot conclude that the bankruptcy abused its discretion in not providing two days notice of its intent to take oral testimony because it is unclear on this record whether any such intent existed.

-11-

The bankruptcy court has broad discretion to overlook transgressions of its local rules (<u>Nunez v. Nunez (In re Nunez)</u>, 196 B.R. 150, 157 (9th Cir. BAP 1996)), as long as a departure from the local rules does not affect substantial rights. <u>Prof'l Programs Group v. Dep't of Commerce</u>, 29 F.3d 1349, 1353 (9th Cir. 1994). The bankruptcy court also has the power to vacate or modify its orders, as long as it is equitable to do so. <u>In re Marcus Hook Dev. Park, Inc.</u>, 943 F.2d 261, 265 (3d. Cir. 1991).

In this case, the bankruptcy court's departure from the local rules and its last-minute decision to essentially vacate its original order prohibiting late-filed pleadings unduly prejudiced Speirs by depriving them of any reasonable opportunity to review the fee statement, which was material to their Disgorgement Motion, and refute it.

Accordingly, we believe the bankruptcy court abused its discretion by accepting the late-filed fee statement into evidence over Speirs's objection.

## VI. CONCLUSION

For the reasons stated above, we VACATE the bankruptcy court's order denying the Disgorgement Motion and REMAND the matter to the bankruptcy court with instructions that it conduct an evidentiary hearing concerning the motion.