NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 18 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-30022 |
| Plaintiff-Appellee, | D.C. No. 6:18-CR-00299 |
| v. | MEMORANDUM[*] |
| DAVID GEORGE HOPKINS, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted May 5, 2021
Portland, Oregon

Before: W. FLETCHER, BEA, and FRIEDLAND, Circuit Judges.

A jury convicted David Hopkins of four crimes: (1) Attempt to Use a Minor to Produce Visual Depiction of Sexually Explicit Conduct, 18 U.S.C. § 2251(a), (e); (2) Attempt to Coerce and Entice a Minor, 18 U.S.C. § 2422(b); (3) Travel with Intent to Engage in Illicit Sexual Conduct, 18 U.S.C. § 2423(b); and (4) Transfer of Obscene Material to a Minor, 18 U.S.C. § 1470. The convictions stemmed from an

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Internet sting operation during which an FBI agent pretended to be both an adult woman and her thirteen-year-old daughter and engaged in sexually explicit chat conversations with Hopkins under both personas. At trial, Hopkins claimed that the FBI entrapped him and that he was merely engaged in fantasy roleplay insofar as he never believed he was conversing with an actual minor. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      Hopkins first argues that, although the district court properly suppressed Hopkins's custodial statements made in the airport because the FBI had failed to advise him adequately of his *Miranda* rights, the district court improperly ruled that his statements were admissible for impeachment purposes.

"Although a statement, taken in violation of *Miranda*, may not be used substantively in the prosecution's case-in-chief, such a statement, if voluntary, may be used for impeachment should the Defendant testify inconsistently." *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). In determining the voluntariness of a custodial statement, we consider the totality of the circumstances and "examine[] 'whether a defendant's will was overborne' by the circumstances surrounding the giving of" the statement. *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). We review de novo the question of voluntariness but review for clear error the district court's factual findings. *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

2

The totality of the circumstances surrounding the roughly two-and-a-half-hour interview, which was captured on video, reveals that Hopkins's statements were voluntary. Although the interview took place in a secure area, Hopkins seemed comfortable as he willingly ruminated about a variety of topics, including his personal life, online footprint, and travel experiences. The overall tone of the interview remained almost entirely cordial: the district court did not clearly err in observing that "[n]o threats were made," "the tone of the interview was calm and conversational," Hopkins "showed a willingness and a desire to talk," "there was no indication he was intimidated," and there was no "force or even psychological pressure applied to him to get him to talk." Indeed, although Hopkins made incriminating statements early in the interview by talking about the underaged girl as if she were real, he then maintained his innocence when confronted with his sexually explicit conversations and consistently denied engaging in any sexual conduct with a minor.

Furthermore, Hopkins "does not assert, and the record does not suggest, that his age, education or intelligence made him susceptible to coercion." *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003). Hopkins complains of no mental, physical, or psychological frailties that would make him particularly susceptible to confusion or intimidation. Nor does he assert that the FBI ignored or manipulated the unequivocal invocation of his rights. *Cf. Henry v. Kernan*, 197 F.3d 1021, 1027–

3

28 (9th Cir. 1999) (reversing denial of habeas and holding that defendant, who was "shaken, confused, and frightened, crying in parts," confessed involuntarily after he "unequivocally requested an attorney" but police employed "slippery and illegal [interrogation] tactics").

Hopkins's argument primarily focuses on one statement from early in the interview, in which the FBI informed Hopkins that he could not leave the secure area "[u]ntil we get this sorted out." Relying on *United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014), Hopkins argues that this statement coerced him into talking. In *Preston*, the police had "told Preston that he was free to leave only *after* he finished answering their questions, and threatened that they would keep returning until Preston did so," a tactic that "paired the prospect of relentless questioning with false promises of leniency." *Id.* at 1026. But, here, no such promises were made to Hopkins; indeed, the FBI reminded Hopkins that he was under no obligation to speak with them. In all, the factual circumstances underlying this case are drastically different than those for which we have held that the accused's statements were involuntary. *Cf. id.* at 1027–28 (vacating conviction and holding that confession was involuntary due to "Preston's severe intellectual impairment; the police's repetitive questioning and the threats that it would continue without end; the pressure placed on Preston to adopt certain responses; the use of alternative questions that assumed his culpability; the officers' multiple deceptions about how the statement

4

would be used; the suggestive questioning that provided details of the alleged crime; and the false promises of leniency").

**2.** Hopkins also argues that the district court improperly admitted evidence of three sexually explicit chat conversations, which the Government had offered to prove that Hopkins had a pre-existing sexual interest in minors, because the conversations occurred before the instant offenses. We review de novo "whether evidence is other act[s] evidence within the meaning of Federal Rule of [Evidence] 404(b), but the admission of this evidence for abuse of discretion." *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019).

Hopkins's sexually explicit chat conversations are admissible because they tend to (1) refute his entrapment defense by proving that he "was predisposed to commit the crime before being contacted by government agents"; and (2) prove his subjective intent to engage in sexual conduct with a minor, not an adult woman, when he flew to Portland. *See United States v. Curtin*, 489 F.3d 935, 945–51 (9th Cir. 2007) (en banc) (holding that fictional "stories containing graphic descriptions of sexual acts with minors" were admissible to refute entrapment defense and to prove intent where defendant was the subject of an Internet sting operation in which an FBI agent posed as a minor).[1] The conversations "provided a glimpse into

---

[1] Although we held in *Curtin* that the fictional stories were relevant under Rule 404(b), we ultimately reversed and remanded for a new trial because the district court had abused its discretion under Rule 403 by "not read[ing] every word of the

[Hopkins]'s sexual interest in children and, as such, were highly probative of whether he wanted to have sex with [the purported minor]." *Id.* at 950 (internal citation omitted); *see also United States v. Poehlman*, 217 F.3d 692, 703–04 (9th Cir. 2000) (explaining that in entrapment cases, "the question is whether there is evidence to support a finding that [defendant] was disposed to have sex with minors prior to opening his correspondence with [the undercover agent]" and courts "must consider what evidence there is as to [defendant]'s state of mind *prior* to his contact," such as "e-mails or chat room postings where [defendant] expressed an interest in sex with children," "items which disclosed an interest in sex with children," or testimony "indicating that [defendant] had behaved inappropriately toward children or otherwise manifested a sexual interest in them").  Accordingly, the district court did not err in admitting Hopkins's sexually explicit chat conversations.  Nor did the district court err by declining to exclude the conversations under Rule 403 of the Federal Rules of Evidence: the conversations did not unduly prejudice Hopkins because other, unchallenged evidence established his sexual interest in minors and featured the same degree of sexual explicitness.

**AFFIRMED**.

---

five disputed stories in preparation for making its balancing decision." *Curtin*, 489 F.3d at 956–58.