OPINION
 

 CALLAHAN, Circuit Judge.
 

 The Government appeals an interlocutory order suppressing statements that Charley B. Haswood made to an FBI agent. The district court suppressed the statements on the ground that the agent coerced Haswood into making them. We disagree with the district court’s conclusion and reverse.
 

 Background
 

 Haswood became the focus of law enforcement sometime in January 2001, when a minor child accused him of sexually abusing her. Because of this accusation, an officer with the Navajo Nation Department of Law Enforcement, Michael Henderson, attempted to contact Haswood by going to his home. While there, Henderson spoke with Haswood’s wife and left his card for Haswood.
 

 
 *974
 
 Several days later, Haswood contacted Henderson by going to his office in Window Rock, Arizona. Henderson interviewed Haswood for approximately thirty or forty minutes. During that time, Has-wood denied either knowing or molesting the minor. Henderson asked if Haswood would be willing to take a polygraph examination. Haswood agreed to do so, and Henderson contacted the FBI to schedule an examination. Haswood left this interview on his own accord.
 

 More than one month later, on March 7, 2001, Haswood traveled to an FBI office in Gallup, New Mexico, for the polygraph exam. At the office, an FBI agent, Special Agent Doug Lintner, escorted Haswood into a conference room where another agent, Special Agent Trace Kirk, was waiting. The room had one door and contained a large desk, a conference table, chairs and a telephone.
 

 Agent Kirk identified himself, told Has-wood about the interview’s purpose and informed Haswood that he was free to leave at any time. Agent Kirk then gave Haswood a standard FBI Advice of Rights Form
 
 [1]
 
 and Consent to Polygraph Form.
 
 [2]
 
 Haswood signed both.
 

 Before conducting the exam, Agent Kirk asked Haswood about the sexual abuse allegations. Haswood denied the allegations and threatened to sue the accuser for slander. Agent Kirk then administered the polygraph examination.
 

 After the exam, Agent Kirk told Has-wood that he would like to discuss some issues with him. Agent Kirk then showed Haswood a newspaper article, which the agent described as an article about “another child abuse case wherein the subjects, during a protracted period of conversations with me, lied a number of times. And they were ultimately sentenced for not only the child abuse, but for their false statements to me.”
 
 [3]
 
 Haswood subsequently admitted touching the victim on three occasions.
 

 According to Agent Kirk, he and Has-wood “went over [Haswood’s] statement.” Once they both “felt comfortable” with it, Agent Kirk asked Haswood to write his statement down. Agent Kirk then left the room, and Haswood wrote a statement. In his statement, which he dated March 7, 2001, Haswood wrote that he touched the victim “but not as a sexual contact.” He also wrote, however, that he had “sexual urges” and touched “her body (with the clothing on) from the neck to the crouch [sic] area sexually but I had full control of my urges.”
 
 [4]
 

 A federal grand jury indicted Haswood on April 11, 2002, on three charges of sexual abuse of a minor child victim, in violation of 18 U.S.C. §§. 1153, 2244,
 
 *975
 
 2246(B). The district court issued a warrant for Haswood’s arrest the following day. The Government gave notice that it intended to introduce both the verbal and written admissions that Haswood made during the interrogation by Agent Kirk. Haswood responded by requesting a volun-tariness hearing and filing a motion to suppress these admissions.
 

 The district court conducted a voluntariness hearing on August 1, 2002, during which Officer Henderson and Agent Kirk testified. At the hearing’s conclusion, the court ordered the Government to file portions of the FBI Policy Manual. It then took the matter under advisement. After requesting additional portions of the FBI Policy Manual, the district court conducted another hearing. At this second hearing, the court suppressed Haswood’s statements. In so ruling, the court concluded that the act of showing the newspaper was both inherently coercive and coercive under the totality of the circumstances. The Government appeals. The sole issue presented to us is whether Agent Kirk coerced Haswood into making his statements.
 

 We have jurisdiction pursuant to 18 U.S.C. § 3731.
 

 Discussion
 

 The Constitution demands that confessions be made voluntarily.
 
 See Lego v. Twomey,
 
 404 U.S. 477, 483-85, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). A confession is involuntary if coerced either by physical intimidation or psychological pressure.
 
 United States v. Tingle,
 
 658 F.2d 1332, 1335 (9th Cir.1981). The test is whether Agent Kirk overbore Haswood’s will when he confessed.
 
 See Schneckloth v. Bustamonte,
 
 412 U.S. 218, 225-26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973);
 
 Clark v. Murphy,
 
 331 F.3d 1062, 1072 (9th Cir.2003).
 

 As noted above, the district court concluded that Haswood’s statements were involuntary. We review that conclusion
 
 de novo. United States v. Fisher,
 
 137 F.3d 1158, 1165 (9th Cir.1998). We review the district court’s underlying factual findings for clear error.
 
 United States v. Nelson,
 
 137 F.3d 1094, 1110 (9th Cir.1998). The Government bears the burden of proving that Haswood’s statements were voluntary and must do so by a preponderance of the evidence.
 
 See Lego,
 
 404 U.S. at 489, 92 S.Ct. 619;
 
 Tingle,
 
 658 F.2d at 1335.
 

 A confession accompanied by physical violence is
 
 per se
 
 involuntary, while one accompanied by psychological coercion is not.
 
 United States v. Miller,
 
 984 F.2d 1028, 1030(9th Cir.1993). No evidence exists that Agent Kirk used physical violence. Thus, in psychological coercion cases such as this, we look to the totality of the circumstances surrounding a confession.
 
 Id.
 
 at 1031.
 

 The totality of the circumstances contains no “tahsmanie definition” of volun-tariness.
 
 Schneckloth,
 
 412 U.S. at 224, 93 S.Ct. 2041. Courts instead often consider the following factors: the youth of the accused, his intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.
 
 Id.
 
 at 226, 93 S.Ct. 2041. Of these factors, the district court found only that Agent Kirk subjected Haswood to prolonged questioning.
 

 The district court inferred that Agent Kirk subjected Haswood to a lengthy interrogation immediately before the polygraph examination. The record, however, offers little support for this inference. Haswood signed and dated the Advice to Rights Form and Consent to Polygraph Form around 9:00 a.m. on March 7, 2001.
 
 *976
 
 He similarly dated his written statement March 7, 2001. The record does not indicate how much time elapsed between these two events. Even if we assume that the interrogation lasted all day, which is the outside inference that the record supports, coercion typically involves far more outrageous conduct.
 
 See, e.g., Mincey v. Arizona,
 
 437 U.S. 385, 398-99, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (finding that a statement could not have been voluntary when obtained from a defendant who was in the hospital, in near coma condition, and in great pain, while fastened to tubes, needles, and a breathing apparatus);
 
 Haynes v. Washington,
 
 373 U.S. 503, 510-12, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (invalidating a confession where the authorities held the suspect for more than five days and never advised him of his rights);
 
 Ashcraft v. Tennessee,
 
 322 U.S. 143, 149-54, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) (invalidating a confession because police officers questioned a suspect in relays for thirty-six hours straight, allowing him only a single five-minute respite).
 

 Haswood argues that the district court made several findings and inferences that, taken as a whole, offer the necessary additional support for a finding of coercion. He notes that the district court concluded that “[t]here’s a reasonable inference from the record” that FBI Agent Lintner drove Haswood to Gallup to take the polygraph examination. This inference has two problems. First, there is no evidence that Agent Lintner drove Haswood to Gallup. All the record indicates is that Haswood “was brought to [the conference room] ... by Special Agent Doug Lintner and introduced to [Agent Kirk].” Second, even if an agent did drive Haswood to Gallup, that fact alone does not necessarily evidence coercion.
 
 See United States v. Orso,
 
 266 F.3d 1030, 1039-40 (9th Cir.2001) (stating that, “if transporting a handcuffed suspect in the back seat of a patrol car constituted coercion, virtually every arrest in this Circuit would be in violation of the Constitution.”).
 

 The district court also found that Agent Kirk had put “words with respect to sexual contact ... in Mr. Haswood’s mouth.” As noted above, Haswood used the terms “sexual contact” and “sexual urges” in his written statement. Agent Kirk admitted that Haswood had not used these terms until their conversation. “Sexual contact” and “sexual urges” are not terms that one typically expects in an unrehearsed confession.
 

 Suspects will naturally adopt various phrases that an officer used during questioning. These phrases may even show up in written statements. Given this, Agent Kirk may well have influenced the verbiage in Haswood’s written statement. Nothing suggests, however, that Agent Kirk influenced anything other than Has-wood’s word choice. This is not evidence of coercion.
 

 Haswood also points to the district court’s conclusion that Agent Kirk was generally evasive during his testimony at the evidentiary hearing. We must give special deference to the district court’s credibility determinations.
 
 Nelson,
 
 137 F.3d at 1110. Nevertheless, even assuming that Agent Kirk’s testimony was evasive, this is not evidence of coercion.
 

 Agent Kirk testified that FBI policy prevented him from recording the polygraph examination. The court disagreed, inferring from its own examination of the FBI Policy Manual that Agent Kirk could have recorded the polygraph examination but chose not to do so. In making this inference, the court noted that the FBI Manual did not affirmatively prohibit an agent from recording an examination. Nothing in the record, however, suggests
 
 *977
 
 that Agent Kirk’s failure to record the interview influenced Haswood’s admission. Furthermore, Agent Kirk’s failure to follow an FBI policy on recording interviews does not necessarily create a constitutional violation.
 
 [5]
 

 C.f. United States v. Goodwin,
 
 57 F.3d 815, 818(9th Cir.1995) (noting in an analogous situation that “[t]he failure of the AUSA to comply with internal department policy does not, without more, establish a deprivation of [the defendant’s] constitutional rights.”).
 

 The district court also concluded that Agent Kirk was disingenuous when he denied that he had told Haswood that his polygraph results indicated deception. Whether Agent Kirk confronted Haswood with the polygraph results makes no difference. The use of polygraph results is a reasonable means of police questioning.
 
 Wyrick v. Fields,
 
 459 U.S. 42, 47, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). Even misrepresentations by law enforcement, while reprehensible, do not necessarily evidence coercive conduct.
 
 Pollard v. Galaza,
 
 290 F.3d 1030, 1034 (9th Cir.2002).
 

 Finally, the district court focused a great deal of attention on Agent Kirk’s use of the newspaper article. We fail to see, however, how the agent’s use of the newspaper article coerced Haswood into confessing. The article illustratively informed Haswood of his potential penalties. Reciting potential penalties or sentences does not constitute coercion.
 
 Orso,
 
 266 F.3d at 1039;
 
 United States v. Bautistas-Amia,
 
 6 F.3d 1360, 1365 (9th Cir.1993).
 

 Viewed as a whole, the totality of the circumstances does not support the district court’s conclusion that Haswood’s statements were coerced. At worst, an FBI agent drove Haswood to the examination, where another agent subjected him to a daylong interrogation. During this time, Haswood denied having molested the young girl. Once the agent concluded the polygraph examination, he accused Has-wood of being untruthful during the exam. The agent then presented Haswood with a newspaper article that illustrated the possible consequences of lying. Haswood verbally confessed. Agent Kirk subsequently influenced which words Haswood used in his written confession.
 

 Haswood does not assert, and the record does not suggest, that his age, education or intelligence made him susceptible to coercion. Haswood was not in custody. The interview took place in a conference room with only one agent present. That agent explained Haswood’s rights, which Haswood waived by signing two different consent forms. The agent never used threats, violence or promises. Haswood never complained of any physical ailments. The agent told Haswood that he was free to go at any time.
 

 Conclusion
 

 After examining the totality of the circumstances, we disagree with the district court’s conclusion that Agent Kirk coerced Haswood. Even if we were to accept the court’s underlying findings and inferences about what occurred, the record still lacks any evidence of coercion. We therefore reverse the district court’s order suppressing Haswood’s statements.
 

 REVERSED.
 

 [1]
 

 . The form stated, in pertinent part, the following: "You have the right to remain silent. Anything you say can by used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time."
 

 [2]
 

 . That form stated, in part, as follows: "You have the right to refuse to take the polygraph test. If you agree to take the polygraph test, you have the right to stop the test at any time. If you agree to take the polygraph test, you have the right to refuse to answer any individual questions."
 

 [3]
 

 . Neither party introduced the newspaper article into the record.
 

 [4]
 

 . At oral argument, the Government said that Haswood left after the interrogation. Has-wood’s attorney did not object. The record implies, but does not specifically state, the same.
 

 [5]
 

 . The district court also inferred that Has-wood's examination was similar to a polygraph technique that the Policy Manual describes as the "Peak of Tension” or "Guilty Knowledge Test.” The court concluded that these practices were coercive and "a technique that the FBI wants to conceal.” Nothing in the record, however, indicates that Agent Kirk used these methods or indicates how they are coercive.