**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10427 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00248-LDG-RJJ-1 |
| v. | |
| KEVIN RAY SCHULTZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, Senior District Judge, Presiding

Argued and Submitted September 13, 2012
San Francisco, California

Before: WALLACE, GRABER, and BERZON, Circuit Judges.


Kevin Ray Schultz appeals from his conviction, arguing that the district

court erred in denying his motion to suppress evidence later introduced at his trial

for being a felon in possession of a firearm.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.** The district court did not clearly err in crediting Detective Giannone's testimony. At the hearing before the district court on Schultz's motion to suppress, Giannone testified to a "'coherent and facially plausible story . . . not contradicted by extrinsic evidence,'" namely that he observed Schultz commit a traffic violation at the corner of Ford Avenue and Las Vegas Boulevard after having earlier observed him commit a different violation at the intersection of Audrie Street and Tropicana Avenue. *See Rodriguez v. Holder*, 683 F.3d 1164, 1172 (9th Cir. 2012) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)). Although there were some inconsistencies in Giannone's testimony at the hearings before the magistrate judge and the district court, and between the two arrest reports that Giannone wrote, the district court adequately explained its decision to credit Giannone's ultimate testimony regarding the principal disputed facts. Under our deferential standard of review, we hold that the district court's credibility determination was not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *See United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

**2.** The officers' undisputed testimony was that they delayed, at most, twenty minutes after observing the traffic violation before stopping Schultz, so as to avoid confronting a possibly armed suspect in a store or commercial parking lot. Under

2

the totality of the circumstances, the officers' decision to stop Schultz after that short delay was reasonable under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Willis*, 431 F.3d 709, 715 (9th Cir. 2005).

**3.** The district court did not clearly err in crediting Detective Denton's and Giannone's testimony, rather than Schultz's, that Schultz knowingly and intelligently waived his Miranda rights before telling the Detectives where in his impounded car a gun was stashed. *See United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007).

**AFFIRMED**

3

*United States v. Schultz*, No. 11-10427

WALLACE, Circuit Judge, concurring:

While I fully join in the memorandum disposition, I write separately to express my concern with Judge Berzon's concurrence.

It is clear that it is not our place as appellate judges to act as fact-finders. That makes sense because "[t]he trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). That "expertise" exists here: we are reviewing fact-finding and credibility determinations by a judge who has been doing so as a district judge for nearly three decades. It is for that reason that we review factual findings underlying the denial of a motion to suppress only for clear error. *See United States v. Lynch*, 437 F.3d 902, 912 (9th Cir. 2006). In undertaking this review, we give special deference to the role of the trial court in making credibility determinations. *See United States v. Haswood*, 350 F.3d 1024, 1028 (9th Cir. 2003). When this is completed, our job (and our appellate expertise) is at an end.

I disagree with Judge Berzon's effort to scour the excerpt of record we have before us on appeal to determine that a potential timing/geography problem exists. Judge Berzon concludes that there is no way Detective Giannone could have observed Schultz run a stop light at Tropicana and Audrie and then followed him to another

1

location over five miles away before losing him, all in the span of six minutes. If there was something to this supposed issue, it seems to me that Schultz's attorney would have raised it in the district court, yet the attorney did not. Schultz likewise did not raise this issue on appeal. As she acknowledges, Judge Berzon alone has discovered her asserted factual issue.

It may be that there is a simple explanation for the seeming discrepancy as to the timing of Schultz's surveillance. Indeed, it is possible that this geographic issue is merely the result of imprecision in the dispatch log or officer testimony. Whether imprecision in the log or testimony was the result of fabrication or mere mistake is the province of the district court, not this panel. Judge Berzon's "factual findings" on this issue usurps the role of the district court. Had the trial lawyers, who knew this case better than we do, thought the suggested issue had any merit and called it to the attention of the court, the district judge could have made a record and a finding on the precise issue.

Additionally, Judge Berzon questions Detective Giannone's credibility because he "flip-flopped" as to who first spotted Schultz again after he was lost. The district judge personally observed Detective Giannone testify and could properly have discounted his testimony if he did not believe it. After observing extensive questioning and cross-examination of Detective Giannone's so-called "flip-flop" as

to who first saw Schultz after he was lost, the district court accepted Detective Giannone's testimony on this issue. Unless we are willing to say that the district court's factual findings as to this alleged "flip-flop" were clearly erroneous, we should not take it upon ourselves to be a Monday-morning quarterback for the district court and make our own personal factual finding. Our sense of the truth of any particular testimony cannot supplant the competency of the district court to make credibility determinations based on careful observation as well as hearing testimony live. The record alone is no substitute.

Finally, Judge Berzon expresses skepticism about the testimony of Detective Giannone, finding it implausible that two separate officers—Detective Giannone and Sergeant Siwy—both rediscovered Schultz within moments of one another, and that Schultz, at nearly the same time, committed another traffic violation. Because of her other concerns about the record, Judge Berzon indicates that she would give this narrative little weight. But such a determination goes beyond what we are tasked with doing as appellate judges. "[O]ur review of a factual finding may *not* look to what we would have done had we been in the trial court's place in the first instance." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009).

In sum, once we conclude that there is no clear error, our review of the facts is over. We should not suggest that we would have made better factual findings based

on a review of the cold record. Any intimation otherwise is unfair to the very experienced district judge who first-hand evaluated the evidence and determined credibility.

*United States v. Schultz*, No. 11-10427
BERZON, Circuit Judge, concurring:

I write separately to emphasize that were our standard of review less deferential, I would have decided the first issue in this case differently. The record contains significant inconsistencies about the officers' whereabouts at key moments during the surveillance operation. Those inconsistencies raise serious doubts about the credibility of the officers' testimony, particularly that of Detective Giannone, the only officer to testify to having observed Schultz commit a traffic violation.

**1.** Giannone testified that he first saw Schultz commit a traffic violation at 9:13 pm at the intersection of Audrie Street and Tropicana Avenue. Giannone then testified that he lost Schultz near Ford Avenue and Las Vegas Boulevard just six minutes later, at 9:19 pm. As best I can tell, the two locations are more than five miles apart via city streets.[1] Given the officers' stated goal of maintaining their "undercover capacity," I am dubious that the police could have pursued Schultz for more than five miles — including through or near the Las Vegas Strip — at more than fifty miles per hour, at least without seeing Schultz commit additional moving

---

[1] We may take judicial notice of maps, including Google Maps, to determine distances and locations. *See McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012); *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012).

1

violations along the way.  But Schultz has never pointed out the distance between the two locations, here or to the district court, or relied upon that distance to impeach Giannone's credibility.  For that reason, the apparent implausibility of this aspect of Giannone's story is not a proper basis for reversing the district court's credibility determination.  Also, the issue not having been raised, there may be some ground, of which I am not aware, for reconciling the testimony with the actual distances.

2.  Giannone flip-flopped on the stand regarding what the district court correctly characterized as the "important" question whether Giannone, or Sergeant Siwy, first spotted Schultz's car again at 9:46 pm.  Giannone first changed his story only after a break in the proceedings before the magistrate judge, during which prosecutors "refreshed" Giannone's "recollection."  Giannone again switched gears in his testimony before the district court.  Although the district court deferred to Giannone's ultimate explanation for the "conflict," if I were the factfinder, I would have been considerably more suspicious about this fickle testimony.

3.  Finally, I am skeptical of Giannone's explanation — memorialized for the first time in a supplemental report nearly a year after the arrest — that about half an hour after the police lost sight of Schultz, two officers in separate patrol

cars both saw Schultz within moments of each other, and, in the same minute, Schultz committed another traffic violation.  In light of the other discrepancies in the record that I have identified, I would not attribute much weight to Giannone's ever-shifting narrative.

Despite my serious concerns, I cannot conclude on this record that the district court's findings were clearly erroneous.  *See United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).  I therefore concur in the decision affirming the denial of Schultz's motion to suppress.