**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 25 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ART TOBIAS, | No. 18-56245 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 2:17-cv-01076-DSF-AS |
| DANIEL EAST, | |
| Defendant-Appellant, | MEMORANDUM[*] |
| and | |
| CITY OF LOS ANGELES; et al., | |
| Defendants. | |

| | |
|---|---|
| ART TOBIAS, | No. 18-56360 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 2:17-cv-01076-DSF-AS |
| MICHAEL ARTEAGA; et al., | |
| Defendants-Appellants, | |
| and | |
| CITY OF LOS ANGELES; et al., | |
| Defendants. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted October 15, 2019
Pasadena, California

Before: WARDLAW and COLLINS, Circuit Judges, and SETTLE,[**] District Judge.

In these consolidated interlocutory appeals,[1] Los Angeles School Police Officer Daniel East and Los Angeles Police Department Detectives Michael Arteaga, Jeff Cortina, John Motto, and Julian Pere challenge the district court's order denying them qualified immunity on Art Tobias's claims under 42 U.S.C. § 1983. We vacate in part, affirm in part, and reverse in part.

1.      "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal . . . constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Our jurisdiction over these interlocutory appeals turns on the collateral order doctrine, which permits interlocutory review of whether the district court committed an error of law in denying qualified immunity but not of whether it erred in finding a genuine dispute

---

[**]      The Honorable Benjamin H. Settle, United States District Judge for the Western District of Washington, sitting by designation.

[1] We consolidate these appeals for purposes of decision.

of material fact. *Mitchell v. Forsyth*, 472 U.S. 511, 527–30 (1985); *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944–45 (9th Cir. 2017). We cannot adequately assess our jurisdiction without a clear understanding of the district court's basis for denying qualified immunity. *Maropulos v. Cty. of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009) (per curiam).

Here, we cannot determine from the district court's order why it denied qualified immunity to Officer East on each of the causes of action asserted against him. The district court did not specifically mention East in its discussion of several of the causes of action or in its brief qualified immunity analysis. In fact, it is not clear whether the district court even analyzed some of the claims asserted against East. For example, the district court granted summary judgment in favor of Detective Motto on the claims arising from the interrogation because of his "limited involvement" in it. But while East was not even present at the interrogation, it appears that the district court's order left the interrogation-related claims against him intact.

We therefore vacate the denial of qualified immunity as to East and remand for the district court to reconsider, on a claim-by-claim basis, whether East is entitled to qualified immunity. We emphasize that the presence of disputed facts does not preclude a finding of qualified immunity. Instead, the district court should determine on remand whether the facts taken in the light most favorable to

3

Tobias show that East violated a clearly established constitutional right. *See Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014) (per curiam).

2.     On the claims against Detectives Arteaga, Cortina, Motto, and Pere (Defendants),[2] we have jurisdiction to determine whether the facts viewed in the light most favorable to Tobias show that Defendants violated Tobias's clearly established constitutional rights. *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016).

3.     Defendants appeal the district court's denial of qualified immunity solely with respect to Tobias's claims arising from his interrogation. The relevant causes of action in the operative complaint are (1) a Fifth Amendment claim arising from the use at Tobias's trial of inculpatory statements that allegedly (a) were taken in violation of Tobias's *Miranda* rights, and (b) were involuntary (Count I); (2) a Fourteenth Amendment substantive due process claim alleging that Defendants used interrogation techniques that "shocked the conscience" (Count II); and (3) a Fourteenth Amendment due process claim alleging, in part, that Defendants "fabricated evidence"—including, among other things, "the substance

---

[2] Detective Motto is an appellant only with respect to Tobias's fabrication-of-evidence claim. We use the generic term "Defendants" to refer to the appellants relevant to each claim—all four detectives for the fabrication-of-evidence claim and only Detectives Arteaga, Cortina, and Pere for the other claims.

of Plaintiff's oral confession" (Count III).[3]  We conclude that the district court properly denied qualified immunity on the *Miranda* claim, but that it erred in denying qualified immunity on all other interrogation-related claims.[4]

    a.    The district court correctly denied qualified immunity on Tobias's claim that Defendants violated his Fifth Amendment right to counsel by continuing his custodial interrogation after he requested an attorney and then using the resulting confession against him in his criminal case.  *See Davis v. United States*, 512 U.S. 452, 458–59 (1994); *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). Tobias's statement—"Could I have an attorney?  Because that's not me"—was an unequivocal invocation of his right to counsel under clearly established law.  *See Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) ("Can I get an attorney right now, man?" was unequivocal); *United States v. De la Jara*, 973 F.2d 746, 750 (9th Cir. 1992) ("Can I call my attorney?" was unequivocal); *Smith v. Endell*, 860 F.2d 1528, 1529 (9th Cir. 1988) ("Can I talk to a lawyer?" was unequivocal).  The immaterial fact that Tobias used "could" rather than "can" in requesting an attorney does not make that request any less unequivocal, and no reasonable officer

---

[3] Count III also alleged a variety of additional misconduct other than the fabricated confession, but Defendants challenge the district court's denial of qualified immunity solely with respect to those issues relating to the interrogation.

[4] Judge Wardlaw dissents, *infra*, from the conclusion that the district court erred in denying qualified immunity on any of the interrogation-related claims.

5

could conclude otherwise. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam).

b.      The district court erred in denying qualified immunity with respect to Tobias's claims that Defendants obtained and used an involuntary confession in violation of his Fifth Amendment right against self-incrimination and that Defendants violated Tobias's due process rights by using interrogation techniques that shock the conscience.

(i).      "A coercive interrogation exists when the totality of the circumstances shows that the officer's tactics undermined the suspect's ability to exercise his free will," *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003) (citation omitted), and a Fifth Amendment violation occurs when an officer coerces a suspect to provide a confession that is subsequently used in criminal proceedings against that suspect, *Crowe v. County of San Diego*, 608 F.3d 406, 430–31 (9th Cir. 2010). In determining whether a statement was involuntary, "[c]ourts . . . often consider the following factors: the youth of the accused, his intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). Even if Tobias's confession were to be deemed involuntary under these standards—a question we

6

do not reach—qualified immunity would still apply unless the facts available to the Defendants at the time they acted would have made clear to any reasonable police officer that Tobias's statement was involuntary. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) ("qualified immunity analysis thus is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question") (quoting *White v. Pauly*, 137 S. Ct. 548, 550 (2017)); *see also City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that *any reasonable official in the defendant's shoes would have understood that he was violating it*.") (emphasis added) (citations and internal quotation marks omitted); *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009) (although Fifth Amendment claim requires subsequent use of statement in criminal proceedings, focus of § 1983 suit against officer is on the circumstances of the interrogation that preceded "turn[ing] over the allegedly coerced statements to prosecutors").

Tobias failed to meet this demanding standard. *See Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct."). Although the interrogating officers committed a clear-cut *Miranda*/*Edwards* violation, that fact alone is not sufficient to establish that the

resulting confession was involuntary. *Bradford v. Davis*, 923 F.3d 599, 616 (9th Cir. 2019) ("statements taken in violation of *Edwards* … are not presumed to be involuntary by virtue of the *Edwards* violation alone"). Considered against the controlling precedent that has found coercion in custodial interrogation, the objective circumstances of Tobias's interrogation, viewed in the light most favorable to him, were not such that any reasonable police officer would have realized that the Fifth Amendment right against compelled self-incrimination was being violated.

Although Tobias was only 13 years old and his unequivocal request for counsel was improperly brushed aside, his early-evening interrogation lasted only 90 minutes, involved no physical threats or abuse, and otherwise relied on interrogation techniques that cannot be said, either singly or in the combination presented here, to have violated clearly established law (*e.g.*, bluffing about the strength of the evidence the officers had, arguing that the courts would go easier on the suspect if he confessed to what he had done, and shaming the suspect for the effect a prosecution would have on his family). Although the question is a close one in light of the patent violation of Tobias's right to counsel, in our view Tobias has failed to show that the officers' conduct in the interrogation constituted impermissible coercion under clearly established law.

Like the Fourth Amendment prohibition of excessive force, the Fifth

8

Amendment protection against the use of involuntary statements at a criminal trial is one that involves "an area of the law 'in which the result depends very much on the facts of each case.'" *Kisela*, 138 S. Ct. at 1153 (citation omitted); *see Haswood*, 350 F.3d at 1027 (courts employ "no 'talismanic definition' of voluntariness," but instead consider the "totality of the circumstances" of the interrogation); *see also supra* at 6 (listing factors considered). Consequently, just as in excessive force cases, "[s]pecificity" is important here, because "'it is sometimes difficult for an officer to determine how the relevant legal doctrine'"— here, the law against coerced confession—"'will apply to the factual situation the officer confronts.'" *Kisela*, 138 S. Ct. at 1152 (citation omitted). As a result, a plaintiff seeking to defeat qualified immunity must establish that "*any* reasonable official in the defendant[s'] shoes would have understood" that the *particular* circumstances of the specific interrogation were impermissibly coercive under the then-existing case law. *Id.* at 1153 (citation and internal quotation marks omitted) (emphasis added); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (citation and internal quotation marks omitted).

Here, the particular circumstances of the interrogation do not present the same sort of confluence of features that we have previously held to be coercive.

*Cf.*, *e.g.*, *Taylor v. Maddox*, 366 F.3d 992, 1015–16 (9th Cir. 2004) (confession was clearly involuntary where 16-year-old suspect was arrested late at night, questioned until 3:00 AM, threatened with a jab to the face, and had his repeated requests for counsel denied), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014); *Gladden v. Holland*, 366 F.2d 580, 582 (9th Cir. 1966) (finding coercion where officers ignored a request for counsel but also conducted the interrogation "throughout the night" and called in alleged rape victims to view the suspect). On the contrary, they appear to be *less* coercive than other cases in which we have found that coercion had *not* been established. *See*, *e.g.*, *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (noting that coercion is not established where police merely indicate that a cooperative attitude would benefit a minor suspect); *Cunningham*, 345 F.3d at 810 (finding no coercion where interrogation went for eight hours without a break, officers continued to question the suspect after claims of innocence, and officers played on the suspect's fear of prison). Because it would not have been apparent to any reasonable officer that the circumstances of this specific interrogation were unconstitutional, the officers were entitled to qualified immunity on Tobias's claim that the officers violated his Fifth Amendment right against compelled self-incrimination.[5]

---

[5] Whether Tobias's remaining Fifth Amendment interrogation claim—that his statement was taken in violation of *Edwards* and used at a criminal trial—is

10

(ii). The district court also erred in denying qualified immunity to the detectives on the claim that the interrogation violated Tobias's Fourteenth Amendment right to substantive due process. *See Stoot*, 582 F.3d at 928. Although this claim (unlike the Fifth Amendment claim) does not require a showing that the confession was used against Tobias, "[t]he standard . . . is quite demanding," requiring something akin to "police torture or other abuse" or comparable conduct that "shocks the conscience." *Id.* (citations and internal quotation marks omitted). For reasons similar to those discussed above with respect to Tobias's coerced confession claim, we conclude that, even construing the facts in the light most favorable to Tobias, he failed to show that any reasonable officer would have understood that the objective circumstances of the interrogation here met the demanding "shocks the conscience" standard.

The facts of this case are materially different from previous cases in which we have found a substantive due process violation for police conduct during an interrogation. *See, e.g., Cooper v. Dupnik*, 963 F.2d 1220, 1248–50 (9th Cir. 1992) (en banc) (finding a substantive due process violation when officers subjected a suspect to "hours of mistreatment and what can fairly be described as sophisticated psychological torture" and intentionally ignored the suspect's repeated invocations

cognizable under § 1983 is not at issue in this interlocutory appeal, and we express no view on it.

11

of his right to counsel and right to silence and for the express "purpose of making it difficult, if not impossible, for [the defendant] to take the stand in his own defense"), *overruled on other grounds*, *Chavez v. Martinez*, 538 U.S. 760, 773 (2003). Tobias's reliance on *Crowe*, 608 F.3d 406, is misplaced. *Crowe* is distinguishable because there, one of the boys interviewed was "in shock over his sister's brutal murder," and the boys were subjected to "hours and hours of interrogation" featuring "the most psychologically brutal interrogation and tortured confession" that one expert witness had ever observed. *Id*. at 431–32. Because controlling precedent does not establish "beyond debate" that the officers' conduct here shocks the conscience, the officers are entitled to qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

4.      Defendants also challenge the district court's denial of qualified immunity as to Tobias's fabrication-of-evidence claim (asserted under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc)), but only to the extent that the claim is based on the contention that Tobias's confession is the asserted fabricated evidence. Defendants are entitled to qualified immunity on this issue because we have held that coerced confession claims are not cognizable under a *Devereaux* fabrication-of-evidence theory. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1069–70 (9th Cir. 2012).

12

Each party shall bear its own costs.

**VACATED IN PART, AFFIRMED IN PART, REVERSED IN PART.**

*Tobias v. East*, Nos. 18-56245+

WARDLAW, Circuit Judge, dissenting in part:

I respectfully dissent from the majority's conclusion that the interrogation tactics used by Detectives Michael Arteaga, Jeff Cortina, and Julian Pere did not violate clearly established Fifth and Fourteenth Amendment law.[1] The detectives in this case cursed at Art Tobias (then 13 years old), ignored his request for counsel, repeatedly told him that he looked like a "cold-blooded killer," falsely said that somebody had "given him up," shamed him for "dragging [his] family into this," promised him likely leniency if he confessed, and threatened him with a harsh sentence if he stayed silent. After more than an hour of this treatment, Tobias broke down and confessed to a murder he did not commit.

"It has . . . long been established that the constitutionality of interrogation techniques is judged by a higher standard when police interrogate a minor." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 431 (9th Cir. 2010). In *Crowe*, we held that officers committed a Fourteenth Amendment substantive due process violation when they "cajoled, threatened, lied to, and relentlessly pressured" two young teenagers into falsely confessing. *Id.* at 432. That is precisely what Detectives Arteaga, Cortina, and Pere did here.

---

[1] I concur in Sections 1, 2, 3(a), and 4 of the memorandum disposition.

1

*Crowe* clearly established that the detectives' conduct violated the Fourteenth Amendment. And in light of *Crowe*, every reasonable officer would also have understood that the interrogation tactics here were unconstitutionally coercive, in violation of the Fifth Amendment. For these reasons, I would affirm the district court's conclusion that Detectives Arteaga, Cortina, and Pere are not entitled to qualified immunity on the coercive interrogation and substantive due process claims.