NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 21 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALBERTO ALAS HERNANDEZ, Petitioner-Appellant, v. CLARK E. DUCART, Warden, Respondent-Appellee. | No. 19-16429 D.C. No. 1:17-cv-00354-DAD-SKO MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Submitted July 17, 2020**
San Francisco, California

Before: SILER,*** LEE, and BUMATAY, Circuit Judges.

A California jury found Alberto Hernandez guilty of second-degree murder

and active participation in a criminal street gang. At the time of the offense,

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Hernandez was 17 years old, but he was prosecuted as an adult. Hernandez filed a federal habeas petition challenging the state's use of his alleged coerced confession in violation of his due process rights.[1] The district court denied his petition. We review the district court's decision de novo, *Arnold v. Runnels*, 421 F.3d 859, 862 (9th Cir. 2005), and affirm.

We look to the totality of the circumstances to evaluate whether threats rendered a confession involuntary. *Fare v. Michael C.*, 442 U.S. 707, 724–25 (1979). The test is whether the officers overbore Hernandez's will when he confessed. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986).

Hernandez identifies several categories of statements from his interrogation as coercive: (1) telling Hernandez that they would "throw the book" at him if he refused to cooperate; (2) stating that they would report that Hernandez "showed no signs of remorse"; (3) promising him leniency ("The only way out is the truth. That's the only way that anybody will ever have any leniency on you."); and (4) claiming that "the judge is not going to believe [Hernandez's] story when [he] can't

---

[1] Hernandez initially also argued that his 40-year to life sentence violated the Eighth Amendment. In his reply brief, Hernandez acknowledged his Eighth Amendment claim was moot under state law. *In re Cook,* 441 P.3d 912 (Cal. 2019).

give accounts" of his actions during the shooting.[2]

Although some of the statements made by the officers in Hernandez's interrogation were troubling, we agree with the district and state courts that the link between the allegedly coercive statements and Hernandez's ultimate confession was too attenuated to render his confession involuntary. Accordingly, since the officers' conduct was not "causally related" to Hernandez's confession, *Connolly*, 479 U.S. at 164, the state court's adjudication of Hernandez's claim was not "contrary to, or . . . an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

These statements did not overbear Hernandez's will since they did not produce his confession. *See Haswood*, 350 F.3d at 1027. In fact, all the alleged coercive statements occurred well before his eventual confession. At the time of the last supposedly coercive statement—regarding the "judge" disbelieving his "story," Hernandez had repeatedly denied shooting the victim. By that point, Hernandez's story was that he was at a park with other gang members, but left as soon as he saw a gun. Later, the police officers told Hernandez that the GPS-tracking bracelet on

---

[2] The officers also threatened to visit the homes of Hernandez's gang associates and blame Hernandez for the visits and offered to allow him to visit his family in exchange for writing an apology letter. Hernandez does not argue that these statements coerced his confession since they occurred after he admitted his role in the shooting. Hernandez also does not challenge the officers' warnings that Hernandez would not see his unborn child if he did not confess.

one of his fellow gang associates on probation showed that, contrary to Hernandez's story, the gang associate was not at the park, and then confronted Hernandez with the statement that the judge would disbelieve his story. Hernandez then altered his story to say he was at a gang member's house, not the park, but he rode his bike home as soon as he heard that someone would be shot.

The changes to Hernandez's stories were not gradual confessions based on the alleged coercive statements identified above: they were continuous lies to keep up with the officers' questions. Hernandez juked from explanation to explanation until his stories became less believable. After Hernandez relayed his story about fleeing on the bike, the officers then (falsely) told him that there was gunshot residue on the bicycle, and again Hernandez gave a new account. This time, according to Hernandez, an unnamed shooter fled on the bike, but Hernandez rode it after the shooter. Hernandez then abandoned the bicycle after realizing that gunpowder may be on the bike. It was not until nearly 30 minutes after the last alleged coercive statement, including one break during which Hernandez went to the bathroom and was offered water that Hernandez dropped the unnamed shooter story and began to admit that he was the shooter.

It was not, therefore, objectively unreasonable for the state court to find a lack of causation connecting the alleged coercive statements to Hernandez's confession. Rather, as the state court found, the confession was reasonably inspired by

4

Hernandez's realization that he had dug himself deeper and deeper into a hole with his variations.

The totality of the circumstances also supports the state court's conclusion that Hernandez did not involuntarily confess. Hernandez alleges no exertion of physical force or threats of physical force prior to his confession. Nothing about the interrogation room implicates coercion: the room was well-lit and provided adequate space between the officers and Hernandez. The questioning lasted just over two hours, included four breaks, Hernandez was offered food and water, and his restraints were loosened.

Furthermore, Hernandez's maturity level did not render his confession involuntary. *Withrow v. Williams*, 507 U.S. 680, 693 (1993) (holding that maturity is a relevant factor in analyzing the presence of police coercion). Unlike the juvenile defendant in *Doody v. Ryan*, 649 F.3d 986, 990 (9th Cir. 2011) (en banc), who was subject to 13 hours of interrogation, had not been involved in the criminal justice system before, and had not received his *Miranda* warnings, Hernandez had previously been interviewed by police, endured only two hours of questioning, and had received his warnings. Nothing in the record suggests that Hernandez did not understand the officers' questions. The record, instead, reflects Hernandez's ability to parry the officers with some agility while maintaining composure throughout.

Accordingly, we affirm the denial of the writ of habeas corpus.

**AFFIRMED**.